UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JOAN PORCO,

                          Plaintiff,

v.                                                     1:20-CV-837
                                                       (TJM/TWD)

ANDREW M. SAUL, COMMISSIONER
SOCIAL SECURITY ADMINISTRATION,

                          Defendant.
_____

APPEARANCES:                                OF COUNSEL:

JOAN PORCO
  *Plaintiff, pro se*
38 Greystone Drive
Vooheesville, New York 12186

U.S. SOCIAL SECURITY ADMIN.                 JOSHUA L. KERSHNER, ESQ.
OFFICE OF REG. GEN. COUNSEL REG. II
  *Counsel for Defendant*
26 Federal Plaza – Room 3904
New York, New York 10278

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## ORDER AND REPORT RECOMMENDATION

    Joan Porco ("Plaintiff") brings this action against the Commissioner of Social Security

("Defendant" or "Commissioner") seeking a writ of mandamus to compel Defendant to issue a

final decision in her case, pay her past due benefits, and provide an immediate interim benefit

adjustment.  (Dkt. No. 1.)  This matter is before this Court for a Report Recommendation.  For

the reasons stated below, the Court recommends dismissing Plaintiff's action for want of subject

matter jurisdiction.

I.    **BACKGROUND**

After retiring from teaching on July 2, 2014, Plaintiff met with the Social Security

Administration ("SSA") in Albany to discuss what she could expect to receive for widow's

benefits.  (Dkt. No. 1. at ¶ 10.)  At that meeting she was told it would be $2,341.00 per month,

but that amount was deemed incorrect on December 2, 2015, and changed to $1,874.40.  *Id.* at

¶¶ 10, 11.  According to Plaintiff, the notice addressing the change in benefits did not provide

any reasons for the decrease.  *Id.* at ¶ 11.  After several attempts to understand why the SSA

reduced her benefits, Plaintiff filed a formal reconsideration request on February 2, 2016.  *Id.* at

¶ 13.[1]

On November 20, 2017, Defendant issued a "Reconsideration Determination" which

adjusted Plaintiff's monthly payment and the alleged overpayment.  *Id.* at ¶ 16.  Plaintiff

requested a hearing before an administrative law judge ("ALJ") to address several errors of fact

and law within the decision on January 25, 2018.  *Id.* at ¶ 17.   On January 9, 2019, Plaintiff

attended a hearing with an ALJ and the ALJ issued a favorable decision on January 31, 2019.  *Id.*

at ¶¶ 18, 19.  In the decision, the ALJ found that the calculations used to determine Plaintiff's

benefits were incorrect and that the most "advantageous combination" of benefits for Plaintiff

would include a Title II disability insurance claim which would effectively increase her monthly

payments and result in back-pay.  *Id.* at ¶ 19.

Plaintiff thereafter tried to communicate with the Albany, New York SSA field office to

determine when she would receive her new monthly benefit amount and back-pay.  *Id.* at ¶ 20.

_____

[1]  Plaintiff also filed for a waiver of the alleged overpayment because it was not her fault.  (Dkt.
No. 1 at ¶ 15.)  This waiver was granted on or about May 18, 2018.  *Id.*

Plaintiff made several attempts in March and April 2019, and contacted her local Congressional Representative to move the process along. *Id*. at ¶¶ 20, 21.

On June 13, 2019, Plaintiff was informed that her case was not pending at the payment center but rather the Appeals Council ("AC") had decided to review her case. *Id*. at ¶ 23. Plaintiff contacted the AC on August 26, 2019, and was informed her case was selected "randomly" and was being reviewed. *Id*. at ¶ 24.

On September 10, 2019, Plaintiff made a written request for an expedited benefit payment pursuant to 42 U.S.C. § 405(q). *Id*. at ¶ 25. SSA District Manager John E. Rainis responded and told her that the AC was reviewing her claim because it was believed she may be entitled to an even greater benefit amount. *Id*. at ¶ 26. Plaintiff was also told that an expedited payment was not possible because the case was at the AC. *Id*. at ¶ 28.

In a "Notice of Appeals Council Action," dated December 2, 2019, ("Notice") the AC informed Plaintiff that it was reopening the ALJ's decision dated January 31, 2019, due to an error in law. *Id*. at ¶ 29. To that end, the AC noted that the ALJ did not properly consider the most advantageous benefit combination available to Plaintiff. *Id*. Plaintiff reviewed the Notice and agreed with the material findings therein. *Id*. at ¶ 30. She then sent a letter to the AC on December 13, 2019, to ask that her case not be remanded to an ALJ but that it move to the payment center for a benefit calculation. *Id*. Plaintiff asserts she did not receive a substantive response to her letter for several months and then wrote a second letter on March 19, 2020, complaining about the persistent delays. *Id*. at ¶ 34. Plaintiff never received a formal response to this letter. *Id*. at ¶ 35.

In March and April 2020, Plaintiff had several telephone calls with Defendant's staff and was informed that SSA employees were working remotely due to the COVID-19 pandemic and

that no work could be performed on her file until people returned to the office. *Id*. at ¶ 36. On April 24, 2020, Plaintiff sent Mr. Rainis a formal request for an interim benefit adjustment to correct her current benefit level. *Id*. at ¶ 38. Plaintiff argued that no discretionary steps remained for the SSA to complete and that the AC action determined the benefits she is entitled to. *Id*. Plaintiff never received a response to this letter. *Id*. at ¶ 39.

Shortly after Plaintiff filed this action, on or about August 13, 2020, the AC issued a formal "Order of Appeals Council" ("Order") remanding Plaintiff's case to an ALJ for a new hearing. (Dkt. No. 10 at 15-21.) The Order vacates the ALJ's January 31, 2019, decision and directs the ALJ to re-evaluate Plaintiff's maximum benefit amount that is most advantageous to her. *Id*. at 20. In the Order, the AC explains that, on February 27, 2019, the Operations Manager of Division 1 of Northeastern Program Service Center sent a memorandum to the AC regarding the ALJ's decision because there was an error in law. *Id*. at 19. Specifically, the memorandum suggested Plaintiff may be entitled to a more advantageous combination of benefits. *Id*. The AC appeared to agree with the memorandum and noted that the ALJ "only considered the advantage of concurrent Disability Insurance Benefits and Widow(er)'s Insurance benefits dual entitlement beginning July 2, 2014." *Id*. However, Plaintiff was apparently eligible for benefits at an earlier date. *Id*. The AC found that the ALJ's decision was "an error of law." *Id*.

Plaintiff initiated this action seeking mandamus relief to compel Defendant to adjudicate her claim. *Id*. at ¶¶ 40-54. Specifically, Plaintiff contends the AC issued a fully favorable decision conclusively determining she is entitled to an increase in benefits and was underpaid from May 2013 to present. *Id*. at ¶ 45.[2] Plaintiff asserts she has "expressly agreed" to the merits

---

[2]  The Court notes that Plaintiff was referencing the Notice in her initial petition and only after she filed this action did the AC issue its official Order remanding the case to an ALJ. Nevertheless, given her *pro se* status, and the similarities between the Notice and Order

of the AC's decision and waived any further consideration of her claim.  *Id*. at ¶ 49.  Therefore, according to Plaintiff, upon remand of the AC's decision, the ALJ can only issue a decision that is consistent with the AC's decision.  *Id*. at ¶¶ 47, 48 (citing 20 C.F.R. §§ 404.977(b), 404.946(a)).  According to Plaintiff, Defendant has a "non-discretionary duty" to adjudicate her claim within a reasonable time.  (Dkt. No. 1 at ¶ 51.)  Plaintiff argues the only administrative action left to be taken is to determine the dollar amount of the monthly payment that corresponds to the applicable combinations of benefits the AC determined was appropriate.  *Id*. at ¶ 53.  Thus, Plaintiff seeks an order from this Court compelling Defendant to:

> (i) Immediately provide plaintiff with an interim adjustment to her current monthly Title II benefits to reflect the benefit level directed in the December 2, 2019 Appeals Council Action; and

> (ii) Immediately convert the December 2, 2019 Appeals Council Action to a final determination; or, to otherwise conclude forthwith administrative adjudication of plaintiff's claim, and thereafter refer the claim for processing of all underpayment and current benefit amounts within twenty days of entry.

*Id*. at Prayer for Relief.

On October 2, 2020, Defendant responded to Plaintiff's petition arguing it should be denied.  (Dkt. No. 9.)  According to Defendant, Plaintiff has failed to exhaust her administrative remedies.  *Id*. at 10-15.  Moreover, Defendant argues the remaining agency action will require the "application of judgment and discretion by numerous employees and decisions-makers" and a writ of mandamus is not appropriate.  *Id*. at 16.  Furthermore, Defendant argues Plaintiff's case has not been unreasonably delayed.  *Id*. at 16-17.  Finally, Defendant asserts Plaintiff's request for an interim benefit award is not an available remedy.  *Id*. at 18.

---

(*compare* Dkt. No. 1-1 at 59-64; *with* Dkt. No. 10 at 15-21) the Court construes her petition as primarily a challenge to the AC's Order to remand the case to an ALJ.

In her reply, Plaintiff asserts her primary claim is that the AC's decision to remand her case back to an ALJ was without legitimate purpose and was unlawful. (Dkt. No. 10 at 1.) To that end, Plaintiff contends the AC's remand Order—issued after she initiated this action—directs the ALJ to take prescribed action for which there could be no discretionary determinations. *Id.* at 3. According to Plaintiff, the ALJ may only consider issues on remand that were not favorable to her. *Id.* at 5 (citing 20 C.F.R. § 404.946.(a)). Thus, Plaintiff argues remand to the ALJ could not result in any material modification to the AC's Order and mandamus relief is appropriate.

## II. DISCUSSION

The Court first notes that Defendant failed to identify the legal vehicle for which his response to Plaintiff's petition is predicated. To that end, Defendant merely filed a "Memorandum of Law in Response to Petitioner's Petition for a Writ of Mandamus." (Dkt. No. 9.) Defendant did not file a Notice of Motion as is required in the Local Rules, nor did he cite the authority for which the Court should dismiss Plaintiff's petition. Nevertheless, in line with other cases considering mandamus actions, the Court construes Defendant's memorandum as support for a motion to dismiss Plaintiff's action pursuant to Federal Rule of Civil Procedure 12(b)(1) because the Court lacks subject matter jurisdiction pursuant to 28 U.S.C. § 1361 (the "Mandamus Act").[3]

---

[3] The Court finds Defendant's arguments regarding Plaintiff's failure to exhaust her administrative remedies only relevant to whether Plaintiff can challenge the AC's Order under 42 U.S.C. § 405(g). To that end, the Court agrees with Defendant that Plaintiff cannot invoke 42 U.S.C. § 405(g) to seek judicial review of the AC's Order. However, in the context of the Mandamus Act, the analysis is slightly different and is primarily concerned with whether there is any means for the Plaintiff to challenge the agency action. Here, because there is no avenue to challenge the AC's Order and it involves an issue collateral to whether Plaintiff is entitled to benefits, the failure to exhaust administrative remedies and seek judicial review pursuant to 42 U.S.C. § 405(g) is irrelevant. *See White v. Matthews*, 559 F.2d 852 (2d Cir. 1977).

Under the Mandamus Act, a "district court shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. "Mandamus jurisdiction requires that three basic conditions be met: '(1) a clear right in the plaintiff to the relief sought; (2) a plainly denied and peremptory duty on the part of the defendant to do the act in question; and (3) no other adequate remedy available.'" *White v. Mathews*, 434 F. Supp. 1252, 1258 (D. Conn. 1976) (*quoting Lovallo v. Froehlke*, 468 F.2d 340, 343 (2d Cir. 1972)), *aff'd*, 559 F.2d 852 (2d Cir. 1977).

In *White v. Mathews*, a class action was brought on behalf of social security disability claimants whose appeals from adverse agency actions had been impeded by extensive delays in the scheduling and completion of hearings before ALJs. The district court found subject matter jurisdiction under the Mandamus Act and issued an injunction imposing mandatory deadlines on the Secretary, 434 F. Supp. at 1259, and the Second Circuit affirmed, 559 F.2d at 856. The district court found plaintiffs had a clear right to a hearing, that "there [was] a duty upon the Secretary to perform within a reasonable time and not permit unreasonable delay of administrative action," and that, because plaintiffs could not receive a prompt hearing, "there [was] virtually no other adequate remedy available." *White*, 434 F. Supp. at 1259. Therefore, the three conditions for mandamus jurisdiction were met.

On appeal, the Secretary of the Department of Health argued that such an interpretation of the Mandamus Act would allow for circumvention of the exhaustion requirement of section 405(g). Affirming the district court's findings on jurisdiction, the Second Circuit emphasized that the action did not affect the merits of the underlying statutory issue of the plaintiffs'

substantive entitlements to disability benefits, and that "the district court was asked merely to require the agency to conduct its proceedings with reasonable speed."  *White*, 559 F.2d at 856.

In a subsequent case, the Second Circuit followed the jurisdictional holding of *White v. Mathews* in the context of unreasonable delays in the adjudication of claims for Social Security Insurance benefits.  *See Barnett v. Califano*, 580 F.2d 28, 31 (2d Cir. 1978).  More recently, several district courts in New York have exercised mandamus jurisdiction to require the SSA to consider the plaintiff's request for reconsideration where the agency failed to act on those requests in a reasonable time.  *See Bamberg v. Astrue*, No. 10 CIV. 6348 CM THK, 2011 WL 4000898, at *7 (S.D.N.Y. Sept. 8, 2011) (Report and Recommendation), adopted without opinion (S.D.N.Y. Sept. 8, 2011) (mandamus jurisdiction appropriate where claimant timely requested hearing yet request had not been processed for over four years); *Clemmons v. Comm'r of Soc. Sec.*, No. 11-CV-1645 KAM, 2012 WL 1107661, at *6 (E.D.N.Y. Mar. 30, 2012) (mandamus jurisdiction to require the commissioner to consider the plaintiff's request for reconsideration); *c.f. Dobson v. Comm'r of Soc. Sec.*, No. 10 CIV. 6167 KPF, 2014 WL 1909363, at *13 (S.D.N.Y. May 12, 2014) (finding no mandamus jurisdiction where plaintiff did not identify a clear right to the relief sought or that plaintiff was denied that right); *Dean A. v. Berryhill*, No. 17-CV-5572 (TNL), 2018 WL 4623069, at *8 (D. Minn. Sept. 26, 2018) (finding no mandamus jurisdiction where the plaintiff could not prove the commissioner violated a nondiscretionary duty).

The import of the above-cited cases is that mandamus jurisdiction may be appropriate where a claimant has no other means to compel the SSA to perform a perfunctory statutory duty or to apply its own nondiscretionary regulations and procedures.  Here, the Court recommends denying Plaintiff's motion for a writ of mandamus because she failed to identify *any* statutory

duty, regulation or procedure Defendant failed to perform.  Rather, Plaintiff's writ of mandamus

amounts to her contention that the administrative process is slow and mired in inefficiencies.

The Court is sympathetic that the SSA has failed to provide accurate information to Plaintiff in a

timely manner and that it has taken so long to get to the right decision in her case.  It is fair to say

that Plaintiff has had to endure a tortured trip through the frustrations of bureaucracy: first being

told she had been overpaid and now being told she was underpaid but still being unable to reap

those benefits.  Plaintiff should be commended for her steadfast commitment to navigating this

quagmire.

Nevertheless, the Court is not empowered to intervene.  In this case, the AC was

permitted by law to remand the case to an ALJ for a new decision.  To that end, as noted above,

Plaintiff's case was referred to the AC because an SSA employee recognized an error in the

ALJ's January 31, 2019, decision and alerted the AC.  (Dkt. No. 10 at 19 (the AC's remand

Order indicating the Operations Manager of Division 1 of the Northeastern Program Service

Center referred the case because there was an error of law); 20 C.F.R. § 404.969(b)(2).)  Upon

further review, the AC found the ALJ had erred in calculating the most advantageous

combination of benefits for Plaintiff and determined that a new decision was necessary.  The AC

was undoubtedly permitted to do so.  *See* 20 C.F.R. 404.977.

Importantly, mandamus is appropriate *only* if the action challenges "the authority of the

[SSA] to take or fail to take an action as opposed to a decision taken within the [SSA's]

discretion."  *Patel v. Reno*, 134 F.3d 929, 932 (9th Cir. 1997); *Wilbur v. U.S. ex rel. Kadrie*, 281

U.S. 206, 218 (1930) (noting mandamus is not appropriate "to direct the retraction or reversal of

action already taken in the exercise of" judgment and discretion).  Plaintiff has not pointed to a

single regulation, statute or procedure the AC violated when it remanded her case to the ALJ for

further consideration.  Rather, Plaintiff is merely challenging the AC's *discretionary* decision to remand her case.

Thus, Plaintiff is not entitled to an order directing Defendant to convert the AC's remand Order into a final decision establishing her benefits.  Plaintiff's reference to 20 C.F.R. § 404.977(b) is not availing.  That regulation directs that an ALJ "shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order."  *Id.*  However, the AC's remand Order did not affirmatively establish anything beyond that the ALJ's January 31, 2019, decision was erroneous.  In other words, the AC's decision to remand the case back to the ALJ merely agreed with the memorandum from the SSA employee that the ALJ's original decision was wrong.[4]  In the Order, the ALJ was directed to conduct his or her own independent review of the evidence to "re-evaluate [Plaintiff's] maximum benefit amount that is most advantageous to her."  (Dkt. No.

---

[4] The Court notes that this is a close case and there is some authority to conclude that the AC abused its discretion in ordering remand.  *See Pierce v. Heckler*, 620 F. Supp. 320, 323 (D. Ariz. 1985); *see also Korb v. Colvin*, No. 4:12-CV-03847-JST, 2014 WL 2514616, at *7 (N.D. Cal. June 4, 2014) (finding an AC's decision was a final order and mandamus was appropriate to enforce the order).  Moreover, *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 761 (5th Cir. 2011), is instructive.  In that case, the Fifth Circuit held that a failure to *carry out* binding, final SSA decisions warranted mandamus relief.  There, a Medicare contractor had withheld payment from the plaintiff despite a final decision issued by an ALJ requiring him to pay in full.  The court held that mandamus relief was appropriate because "the plaintiff [did] not seek a redetermination of administrative decisions . . . but rather enforcement of these administrative decisions."  *Id.* at 764.  The court further held that a Medicare contractor had a "nondiscretionary duty to issue payment for a successfully appealed claim" finally determined in the plaintiff's favor.  *Id.* at 769.  Here, Plaintiff alleges that AC already made a final, favorable decision in her case when it issued its Order on remand.  However, unlike the challenged orders in *Wolcott* and *Korb*, the Court finds the AC's remand Order in question was not a final order.  Rather, under section 405(h) of the Social Security Act, only "the findings and decisions of the Secretary after a *hearing* shall be binding upon all . . . who were parties to such hearing."  42 U.S.C. § 405(h).  The AC's remand Order was issued without a new hearing to address the error in calculation and is thus not binding upon Defendant.

10 at 20.)  Though it is almost certain that the ALJ's decision will mirror the AC's findings, it does not follow that the Court can vacate the lawfully made remand Order for this reason alone.

No doubt Plaintiff has suffered greatly due to mistakes and delay that—for the most part[5]—are due to agency errors.  Nevertheless, the delay in this case—standing alone—is not a basis for the Court to issue a writ of mandamus.  Therefore, under the circumstances of this case, the Court concludes that it is without authority to issue a writ of mandamus and thus lacks jurisdiction to consider Plaintiff's action.[6]

**ACCORDINGLY**, it is

**RECOMMENDED** that Plaintiff's petition for a writ of mandamus (Dkt. No. 1) be **DENIED AND DISMISSED**; and it is further

**ORDERED** that the Clerk provide to Plaintiff a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (*per curiam*).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing

---

[5]  The Court is sympathetic to Defendant's explanation regarding the recent delay in administering Plaintiff's claim due to the COVID-19 pandemic.  Nevertheless, the Court is hopeful that the ALJ in Plaintiff's case can move this case forward without further delay.

[6]  Because the Court finds it does not have jurisdiction to consider Plaintiff's petition, it further finds it is not able to order that Defendant provide her with an interim benefit adjustment.

*Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1);

Fed. R. Civ. P. 72.


Dated: February 22, 2021
        Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

2011 WL 4000898
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Reynard BAMBERG, Plaintiff,
v.
Michael J. ASTRUE, Commissioner
of Social Security, Defendant.

No. 10 Civ. 6348(CM)(THK) (Pro Se).
|
Sept. 8, 2011.

### REPORT AND RECOMMENDATION

THEODORE H. KATZ, United States Magistrate Judge.

**\*1 TO: HON. COLLEEN MCMAHON, UNITED STATES DISTRICT JUDGE.**

**FROM: THEODORE H. KATZ, UNITED STATES MAGISTRATE JUDGE.**

Reynard Bamberg ("Plaintiff"), proceeding *pro se,* commenced this action on August 24, 2010, after waiting more than three years for a hearing before an Administrative Law Judge ("ALJ") to address the denial of Supplemental Security Income ("SSI") benefits for the period of 1995–2000, and the denial of a waiver of an overpayment received in 1994–1995. Construed liberally, he seeks in this action an order requiring Defendant, the Commissioner of Social Security ("Defendant"), to award him SSI benefits from November 1995 to August 2000, and to waive any overpayment of benefits that he received, or, in the alternative, to hold a hearing and make a determination with respect to his two applications. [1] Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, Defendant filed a motion to dismiss the Complaint, on January 28, 2011, which was renewed on March 23, 2011, after Plaintiff amended his Complaint. Defendant argues that the Court lacks subject matter jurisdiction because Plaintiff did not exhaust his administrative remedies. [2] The motion was referred to this Court for a Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1)(B) and (C) and Rule 72.1(a) of the Local Civil Rules of the Southern District of New York.

For the reasons that follow, the Court respectfully recommends that Defendant's motion be denied and that the action be remanded to the Commissioner for a prompt hearing.

### BACKGROUND

Plaintiff has been declared disabled by the Social Security Administration ("SSA"), with an onset disability date of July 10, 1988, and he receives disability benefits, as well as Supplemental Security Income ("SSI") benefits. (*See* Decision of ALJ Thomas J. McGrimley, dated Jul. 19, 1991, attached as Ex. A to Plaintiff's Memorandum in Opposition to Defendant's Motion, dated Apr. 15, 2011 ("Pl.'s Mem."), at 1.)

The SSA determined that Plaintiff was overpaid $3,626.00 in Social Security benefits from July 1994 through March 1995, a period during which Plaintiff was incarcerated. Plaintiff appealed that determination and asked for a waiver of the overpayment. On October 27, 1997, a hearing was held before ALJ Sol A. Wieselthier, who held that Plaintiff "was overpaid $3,626.00 in Social Security Benefits; and ... was not without fault in causing the overpayment; and therefore, recovery of the overpaid amount may not be waived." (*See* Decision of ALJ Sol A. Wieselthier, dated Apr. 16, 1998, attached as Ex. D to Pl.'s Mem., at 4.) The ALJ noted that, at the time of the hearing, the amount of the overpayment had already been reduced to $1,847.20, through withholding of benefits. (*See id.* at 3.)

Plaintiff appealed the ALJ's decision to the Appeals Council of the SSA. On October 6, 1999, the Appeals Council determined that "the [ALJ]'s consideration of the issues of 'fault' and waiver was premature because the [SSA] had not considered them initially and upon reconsideration after conducting a personal conference with [Plaintiff];" the Appeals Council dismissed Plaintiff's request for a hearing, filed on January 25, 1996, and pronounced the ALJ decision of April 16, 1998 to be of no effect. (*See* Order of Appeals Council, dated Oct. 6, 1999, attached as Ex. F to Pl.'s Mem., at 1.) In addition, the Appeals Council

> **\*2** "forward[ed] the claim ... to the Office of Disability and International Operations, Baltimore, Maryland to act on the claimant's request that recovery of any overpayment in

disability insurance benefits from him be waived ... [and on his] requests for reconsideration on the suspension of his disability insurance benefits under the prisoner suspension provision of section 202(x) of the Social Security Act as well as on the fact and amount of the resultant overpayment which have yet to be addressed."

(*Id.* at 1–2.) Such reconsideration never took place.

Plaintiff stopped receiving SSI benefits in 1995. SSI benefits payments resumed in August 2000. (*See* Print-out, dated Jan. 19, 2001, attached as Ex. F to Amended Complaint, dated Feb. 1, 2010 ("Am.Compl.").)

On December 4, 2006, Plaintiff sent a reconsideration form to the SSA, asking for a "determination about SSI benefits from 1995 thru [sic] 2000" and declaring that he "did not receive anything and want[ed] to know why." (Request for Reconsideration, dated Dec. 4, 2006, attached as Ex. 1 to Complaint, dated Aug. 24, 2010.) The reconsideration form did not mention the 1994–1995 overpayment. The SSA replied in a December 14, 2006 letter, entitled, "Overpayment Information." The letter denied Plaintiff waiver of the 1994–1995 overpayment. In the personalized part of the form where the SSA should have explained the reasons for denying the waiver, the SSA instead provided information about the denial of benefits from 1995 to 2000. Specifically, the SSA indicated that Plaintiff had applied for SSI benefits "several times" between 1995 and 2000 and was denied such benefits on December 20, 1995, due to "excess income," and again on September 22, 1997, due to Plaintiff's failure to provide the SSA with "info re rent amount [sic]" and failure to "find representative payee." (Reconsideration, dated Dec. 14, 2006, attached as Ex. 1 to the Declaration of Donald V. Ortiz ("Ortiz Decl."), at 2.)

On December 19, 2006, Plaintiff submitted a timely request for a hearing before an ALJ for review of this reconsideration. (*See* Request for Hearing, dated Dec. 18, 2006, attached as Ex. 2 to Ortiz Decl.) The Commissioner acknowledges that Plaintiff's request was never processed, and no hearing was scheduled. (*See* Ortiz Decl. ¶ 3(b); Defendant's Memorandum in Support of his Motion to Dismiss, dated Mar. 22, 2011, at 1.)

Almost four years later, on August 2, 2010, Plaintiff sent a letter to the SSA Office of Disability Adjudication Review, requesting help in obtaining the ALJ hearing he requested. (*See* Plaintiff's Letter, dated Aug. 2, 2010, attached as Ex. A to Am. Compl.) On August 4, 2010, the SSA Office of Disability Adjudication Review referred Plaintiff to an SSA field office. (*See* SSA Letter, dated Aug. 4, 2010, attached as Ex. B to Am. Compl.) Plaintiff visited the field office on August 10, 2010 (*see* Plaintiff's Call Number Ticket, dated Aug. 10, 2010, attached as Ex. C to Am. Compl.), and was told that "a letter was forthcoming explaining why Plaintiff could not get an ALJ hearing." [3] (Affidavit of Reynard Bamberg, dated Apr. 15, 2011, attached to Pl.'s Mem., ¶ 16.) There is no evidence that any such letter was sent or received. This action followed.

## DISCUSSION

## I. Legal Standard Governing Motions to Dismiss under Rule 12(b)(1)

**\*3** Defendant is seeking to have this action dismissed for lack of subject-matter jurisdiction. "Dismissal of a case for lack of subject matter jurisdiction under Rule 12(b)(1) is proper 'when the district court lacks the statutory or constitutional power to adjudicate it.' " *Ford v. D.C. 37 Union Local 1549,* 579 F.3d 187, 188 (2d Cir.2009) (quoting *Makarova v. U.S.,* 201 F.3d 110, 113 (2d Cir.2000)). In considering a Rule 12(b)(1) motion, federal courts must construe all ambiguities and inferences in a plaintiff's favor. *See Aurecchione v. Schoolman Transp. Sys., Inc .,* 426 F.3d 635, 638 (2d Cir.2005) (quoting *Makarova,* 201 F.3d at 113). A court may refer to evidence outside of the pleadings, and the burden is on the plaintiff to prove by a preponderance of the evidence that jurisdiction exists. *See Makarova,* 201 F.3d at 113. However, a court retains its obligation to accord *pro se* pleadings a close and sympathetic reading. *See Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (per curiam) ("A document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (internal citations and quotation marks omitted).

## II. Subject–Matter Jurisdiction under the Social Security Act

## A. Exhaustion of Administrative Remedies Requirement

Under the principle of sovereign immunity, "the United States, as sovereign, is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 769–70, 85 L.Ed. 1058 (1941) (citations omitted); *see also* *Lehman v. Nakshian,* 453 U.S. 156, 160–61, 101 S.Ct. 2698, 2701–02, 69 L.Ed.2d 548 (1981); *Dotson v. Griesa,* 398 F.3d 156, 177 (2d Cir.2005). The United States must unequivocally express its consent to be sued by specifically waiving sovereign immunity in a statutory text. *See* *Lane v. Peña,* 518 U.S. 187, 192, 116 S.Ct. 2092, 2096, 135 L.Ed.2d 486 (1996); *see also* *U.S. v. Nordic Village, Inc.,* 503 U.S. 30, 33–44, 112 S.Ct. 1011, 1014–15, 117 L.Ed.2d 181 (1992); *U.S. v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980).

The United States has authorized limited judicial review of claims arising under Title XVI of the Social Security Act. Judicial review of a decision by the Commissioner of the SSA is governed by 42 U.S.C. § 405(g),[4] which provides:

> [a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party ... may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision, or within such further time as the Commissioner of Social Security may allow.

42 U.S.C. § 405(g). This section provides the exclusive means of judicial review of social security benefit determinations: "[n]o findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or government agency except as herein provided." 42 U.S.C. § 405(h). Section 405(g) requires claimants seeking judicial review to first exhaust all available administrative procedures. *See* *Mathews v. Eldridge,* 424 U.S. 319, 327, 96 S.Ct. 893, 899, 47 L.Ed.2d 18 (1976) ("The only avenue for judicial review is 42 U.S.C. § 405(g), which requires exhaustion of the administrative remedies provided under the Act as a

jurisdictional prerequisite. On its face § 405(g) thus bars judicial review of any denial of a claim of disability benefits until a 'final decision' by the Secretary after a 'hearing.' "); *accord* *Weinberger v. Salfi,* 422 U.S. 749, 757, 95 S.Ct. 2457, 2463, 45 L.Ed.2d 522 (1975); *Dietsch v. Schweiker,* 700 F.2d 865, 867 (2d Cir.1983); *Rivera v. Apfel,* No. 01 Civ. 0752(NRB), 2001 WL 699065, at *2 (S.D.N.Y. June 21, 2001).

**\*4** The administrative procedures that must be exhausted are set forth in SSA regulations, 20 C.F.R. §§ 416.1400–416.1482, and consist of four steps. *See* *Heckler v. Day,* 467 U.S. 104, 106, 104 S.Ct. 2249, 2251, 81 L.Ed.2d 88 (1984) (setting forth the four-step procedure for claims arising under Title II of the Social Security Act). First, a claim is subject to an initial determination by the SSA. *See* 20 C.F.R. §§ 416.1402–416.1405. Second, a dissatisfied claimant is entitled to *de novo* reconsideration by the SSA if he files a request within sixty days after receipt of the adverse determination. *See* 20 C.F.R. § 416.1409. Third, he is entitled to an evidentiary hearing and a *de novo* review by an ALJ of the initial determination or of the reconsideration, subject to the same sixty day filing requirement. *See* 20 C.F.R. §§ 416.1430, 416.1433. Fourth, the claimant may request that the Appeals Council of the SSA review the ALJ opinion. *See* 20 C.F.R. §§ 416.1467–416.1468. Judicial review can only occur after the Appeals Council acts upon a request to review an ALJ decision, resulting in a final decision of the Commissioner. *See* 42 U.S.C. § 405(g); 20 C.F.R. § 416.1481; *Mathews v. Chater,* 891 F.Supp. 186, 188 (S.D.N.Y.1995) ("A determination is only final after the Appeals Council has denied review or decided the case after review. It is at that point that there is a final decision subject to judicial review under 42 U.S.C. § 405(g).") (internal citations omitted).

Plaintiff has not obtained a final decision from the Commissioner on either the denial of SSI benefits from 1995 to 2000 or the denial of waiver of the 1994–1995 overpayment. In the absence of a final decision by the Commissioner, the Court does not typically have subject-matter jurisdiction over a plaintiff's claim under the Social Security Act. However, the Court may, under certain circumstances, find that a judicial waiver of the exhaustion requirement is appropriate.

## B. Waiver of Exhaustion Requirement

Under certain limited circumstances, federal courts can find jurisdiction over social security claims, even in the absence of a final decision of the Commissioner. Section 405(g) has been held to contain two elements, one waivable, the other not. "The waivable element is the requirement that the administrative remedies prescribed by the Secretary be exhausted. The nonwaivable element is the requirement that a claim for benefits shall have been presented to the Secretary." *Eldridge,* 424 U.S. at 328, 96 S.Ct. at 899. Plaintiff has presented both issues to the Commissioner of Social Security-through his various requests for reconsideration and his letter dated August 2, 2010. The nonwaivable requirement is therefore satisfied.

The requirement of exhaustion of administrative remedies can be waived either by the Secretary or, in appropriate circumstances, by the courts. Judicial waiver is only appropriate "where a Plaintiff's legal claims are collateral to the demand for benefits, where exhaustion would be futile, or where the harm suffered pending exhaustion would be irreparable." *City of New York v. Heckler,* 742 F.2d 729, 736 (2d Cir.1984); *accord Smith v. Schweiker,* 709 F.2d 777, 780 (2d Cir.1983) (citing *Eldridge,* 424 U.S. at 330–331, 96 S.Ct. at 900). In those cases, "a claimant's interest in having a particular issue resolved promptly is so great that deference to the agency's judgment is inappropriate." *Eldridge,* 424 U.S. at 330, 96 S.Ct. at 900. For example, the Supreme Court has held that it could review a constitutional challenge to administrative procedures established by the SSA which allowed the termination of disability benefits without a pretermination hearing, although administrative remedies had not been exhausted, because this constitutional challenge was "entirely collateral to [Plaintiff]'s substantive claim for entitlement." *Eldridge,* 424 U.S. at 330, 96 S.Ct. at 900.

**\*5** To the extent that Plaintiff is asking the Court to waive the overpayment he received while he was incarcerated, or to award him SSI benefits for the period 1995–2000, Plaintiff's claim is not collateral to the demand for benefits. Both claims are, in effect, substantive claims for entitlement to SSI benefits. Exhaustion would not be futile, since Plaintiff has administrative channels at his disposal to seek review of SSA's initial determinations and to recover benefits retroactively. Moreover, any harm that Plaintiff could suffer pending exhaustion is not irreparable, since he currently receives SSI benefits. Therefore, judicial waiver is not appropriate.

Plaintiff also alleges, however, that a violation of his due process rights and of the Social Security Act occurred when Defendant failed to process Plaintiff's request for a hearing before an ALJ. This part of Defendant's claim is collateral to a demand for benefits, and might warrant a judicial waiver of the exhaustion requirement. Nonetheless, the Court does not need to. decide this issue since there is another basis for subject-matter jurisdiction in the Mandamus Act. *See White v. Mathews,* 559 F.2d 852, 856 n. 4 (2d Cir.1977) (exercising mandamus jurisdiction and finding it unnecessary to consider section 405(g) as an alternative jurisdictional ground in a similar case).

### III. Subject–Matter Jurisdiction under the Mandamus Act

Federal jurisdiction may exist under the Mandamus Act, which states that a "district court shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Although the Supreme Court has declined to address the issue, *see Heckler v. Day,* 466 U.S. at 616, 104 S.Ct. at 2022, the Second Circuit has held that 42 U.S.C. § 405(h) does not foreclose the court's exercise of mandamus jurisdiction pursuant to 28 U.S.C. § 1361. *See Heckler,* 742 F.2d at 739; *Dietsch v. Schweiker,* 700 F.2d at 867–68.

"Mandamus jurisdiction requires that three basic conditions be met: '(1) a clear right in the plaintiff to the relief sought; (2) a plainly denied and peremptory duty on the part of the defendant to do the act in question; and (3) no other adequate remedy available.' " *White v. Mathews,* 434 F.Supp. 1252, 1258 (D.Conn.1976) (quoting *Lovallo v. Froehlke,* 468 F.2d 340, 343 (2d Cir.1972)), *aff'd,* 559 F.2d 852 (2d Cir.1977).

In *White v. Mathews,* a class action was brought on behalf of social security disability claimants whose appeals from adverse agency actions had been impeded by extensive delays in the scheduling and completion of hearings before ALJs. The district court found subject-matter jurisdiction under the Mandamus Act and issued an injunction imposing mandatory deadlines on the Secretary, 434 F.Supp. at 1259,

and the Second Circuit affirmed, 559 F.2d at 856. The district court found that plaintiffs had a clear right to a hearing, that "there [was] a duty upon the Secretary to perform within a reasonable time and not permit unreasonable delay of administrative action," and that, because plaintiffs could not receive a prompt hearing, "there [was] virtually no other adequate remedy available." White, 434 F.Supp. at 1259. Therefore, the three conditions for mandamus jurisdiction were met. On appeal, the Secretary of the Department of Health argued that such an interpretation of the Mandamus Act would allow for circumvention of the exhaustion requirement of section 405(g). Affirming the district court's findings on jurisdiction, the Second Circuit emphasized the fact that the action did not affect the merits of the underlying statutory issue of the plaintiffs' substantive entitlements to disability benefits, and that "the district court was asked merely to require the agency to conduct its proceedings with reasonable speed." White, 559 F.2d at 856. In a later case, the Second Circuit followed the jurisdictional holding of White v. Mathews in the context of unreasonable delays in the adjudication of claims for SSI benefits. See Barnett v. Califano, 580 F.2d 28, 31 (2d Cir.1978).

**\*6** Here, Plaintiff has a clear right to a hearing under 42 U.S.C. § 1383(c) and 20 C.F.R. § 416.1430(a)(1). Defendant has recognized this right in the reconsideration notice sent to Plaintiff on December 14, 2006,[5] yet no hearing has been held. Although Defendant has indicated that the case would "be expedited and sent to an [ALJ] for a hearing" upon completion of this action (Ortiz Decl. at 3), such a commitment falls short of actually holding or scheduling a hearing and does not render this action moot. See Williams ex rel. AK v. Astrue, 509–CV–0890 GTS/GJD, 2009 WL 3334352, at \*4 (N.D.N.Y. Oct.14, 2009) (action moot when Commissioner had scheduled plaintiff's hearing following filing of complaint).

Defendant has a duty to provide claimants with timely hearings and viable administrative remedies.[6] See, e.g., Butts v. Barnhart, 416 F.3d 101, 105 (2d Cir.2005) (the delay was *per se* unreasonable because it involved years of inaction"). Yet, Plaintiff has been waiting for a hearing before an ALJ for more than four years. Defendant has thus failed to perform its duty to provide Plaintiff with a "reasonable … opportunity for a hearing." 42 U.S.C. § 1383(c).

Finally, Plaintiff has tried to resolve his claims through the administrative process. He filed timely requests for reconsiderations and hearings. As Defendant concedes, Plaintiff's claims were not stalled through Plaintiff's fault, but because Defendant failed to process Plaintiff's request for a hearing. The exhaustion requirement of mandamus jurisdiction is designed to prevent plaintiffs from circumventing administrative schemes or from obtaining relief they forfeited by failing to comply with the administrative process. This is not the case here. Therefore, mandamus is appropriate. See Cintron v. Comm'r of Soc. Sec. Admin ., 09 Civ. 09039(GDB)(KNF), 2011 WL 2791351, at \*17–19 (S.D.N.Y. July 1, 2011) (finding that all remedies were exhausted and exercising mandamus jurisdiction where Plaintiff had attempted numerous times to obtain a hearing "only to have the defendant reject her attempts and make more errors and cause confusion concerning her case"); *see also* Dietsch v. Schweiker, 700 F.2d at 868 (exercising mandamus jurisdiction despite absence of final decision, where plaintiff claimed he filed a timely request for review with the Appeals Council); *accord* Jones v. As true, 526 F.Supp.2d 455, 460 (S.D.N.Y.2007); Walrath v. Comm'r of Soc. Sec, Civ. 5:06–CV–367(RFT), 2009 WL 236062, at \*4 (N.D.N.Y. Jan. 30, 2009).

No adequate remedy is available to Plaintiff other than an order by this Court compelling Defendant to promptly consider and address the issues identified in the December 14, 2006 reconsideration. Specifically, the Commissioner should determine the fact and amount of the overpayment allegedly received by Plaintiff in 1994–1995, and rule on Plaintiff's request that the recovery of the overpayment be waived.[7] In addition, there should be a review of Plaintiff's application for reconsideration of the denial of benefits for the period 1995–2000.

### CONCLUSION

**\*7** For the reasons set forth above, the Court respectfully recommends that Defendant's motion be denied and the matter be remanded to the Commissioner for an adjudication of Plaintiff's claims within sixty (60) days.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file

WESTLAW   © 2021 Thomson Reuters. No claim to original U.S. Government Works.

written objections. *See also* Fed.R.Civ.P. 6(a) and (e). Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Colleen McMahon, United States District Judge, and to the chambers of the undersigned, Room 1660. Any requests for an extension of time for filing objections must be directed to Judge McMahon. Failure to file objections will result in a waiver of those objections for purposes of appeal. *See* *Thomas v. Arn,* 474 U.S. 140, 149–52, 106 S.Ct. 466, 472–73, 88 L.Ed.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986); *IUE AFL–CIO*

*Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993), *cert. denied,* 513 U.S. 822, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.), *cert. denied,* 506 U.S. 1038, 113 S.Ct. 825, 121 L.Ed.2d 696 (1992); *Small v. Secretary of Health & Human Servs.,* 892 F.2d 15, 16 (2d Cir.1989).

**All Citations**

Not Reported in F.Supp.2d, 2011 WL 4000898

# Footnotes

1    Although Plaintiff's pleadings do not mention the waiver of overpayment, it is reasonable to construe Plaintiff's claim for relief as including a request for consideration of his waiver claim because Defendant has treated it as such, and because Plaintiff attached to his Complaint a December 19, 2006 request for an ALJ hearing on both the denial and the waiver issue.

2    In the Memorandum of Law in support of Defendant's motion, the issue of exhaustion is raised only in the context of the waiver of the overpayment. No mention is made in the Memorandum of Plaintiff's claim of entitlement to benefits for the period of 1995–2000.

3    A handwritten note, apparently made by an SSA field office agent on the occasion of this August 10 visit, indicates that the agent was "unable to see anything on the system." (Handwritten Note, dated Aug. 8, 2010, attached as Ex. C to Am. Compl.)

4    Section 405(g) governs judicial review of disability benefits determinations under Title II of the Social Security Act, but section 1383(c)(3) of Title XVI provides that the decisions of the SSA concerning SSI benefits "shall be subject to judicial review as provided in section 405(g) of [the Social Security Act] to the same extent as the Commissioner's final determinations under section 405." 42 U.S.C. § 1383(c)(3).

5    "If you disagree with this decision, you have the right to request a hearing." (Reconsideration, dated Dec. 14, 2006, attached as Ex. 1 to Ortiz Decl., at 2.)

6    Definitions of "reasonable time" have necessarily evolved over time. The delays in *White v. Mathews* and *Barnett v. Califano* ranged from six months to one year. *See* *White,* 559 F.2d at 861; *White,* 434 F.Supp. at 1254, 1262; *Barnett,* 580 F.2d at 30. What the courts then characterized as a "glacial pace," *White,* 559 F.2d at 854, would today be considered expeditious. *See* Social Security Online, http:// ssacusthelp.ssa.gov/a pp/answers/detail/a_id/1160/kw/administrative % 20*l*awjudge% 20appeal/related/1 (last visited Jul. 28, 2011) ("The average amount of time needed to process a hearing request during fiscal year 2010 was 426 days.").

7    The Court notes that the SSA must grant claimants a personal conference with an SSA officer before deciding whether they are "without fault" in causing an overpayment. *See* *Califano v. Yamasaki,* 442 U.S. 682, 693, 99 S.Ct. 2545, 2553, 61 L.Ed.2d 176 (1979); 20 C.F.R. §§ 404.506, 416.557. Although the Appeals Council remanded Plaintiff's claim to a field office for such determination in 1999, the personal conference never took place. In addition, it appears that the SSA started recouping the overpayment before deciding the issue of Plaintiff's fault, even though a waiver had been requested.

**End of Document**                                    © 2021 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 1107661
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Joan E. CLEMMONS, Plaintiff,
v.
COMMISSIONER OF SOCIAL
SECURITY, Defendant.

No. 11–cv–1645 (KAM).
|
March 30, 2012.

**Attorneys and Law Firms**

Joan E. Clemmons, Uniondale, NY, pro se.

Arthur Swerdloff, United States Attorneys Office, Brooklyn, NY, for Defendant.

## MEMORANDUM AND ORDER

MATSUMOTO, District Judge.

**\*1** *Pro se* plaintiff Joan E. Clemmons ("plaintiff") commenced this action to challenge the Social Security Administration's September 1, 2010 decision to terminate her monthly Supplemental Security Income ("SSI") benefits. Plaintiff seeks: (1) a finding that the Social Security Administration (the "Administration") provided insufficient notice before terminating her SSI benefits; (2) an order to resume payment of plaintiff's SSI benefits and to retroactively pay her terminated benefits; and (3) a hearing before the Administration at which she could present arguments for the resumption of her monthly SSI benefits and retroactive payment of the SSI benefits that she has not received since September 1, 2010. (*See* ECF No. 1, Complaint ("Compl.") at 12.)

Presently before the court is defendant's contested motion to dismiss plaintiff's complaint for lack of subject-matter jurisdiction. (ECF No. 30, Defendant's Motion to Dismiss (Def.'s Mem.).) In addition, as set forth in this court's September 16, 2011 order, the court construes plaintiff's "Motion to Strike Defendant's Motion to Dismiss" (*see* ECF Nos. 18, 33) as an opposition to defendant's motion to dismiss, or alternatively, as a cross-motion for judgment in her favor.

For the reasons set forth below, the court denies defendant's motion to dismiss for lack of subject-matter jurisdiction and remands for further administrative proceedings. In light of the court's remand, the court denies plaintiff's cross-motion for judgment in her favor.

## *BACKGROUND* [1]

On April 1, 2010, plaintiff began collecting SSI benefits from the Administration on a monthly basis. (Compl. at 2.)

With respect to SSI recipients, the Administration conducts periodic "redeterminations" to review the ongoing eligibility of each SSI beneficiary and to verify that he or she is receiving the correct amount of benefits. (*Id.,* Ex. H at 1; 20 C.F.R. § 416.204.) As part of the redetermination process, the Administration requires SSI recipients "to give information about changes to ... income, resources, and living arrangements." (Compl., Ex. H at 1.) The Administration sends notices to beneficiaries to inform them of their need to comply with the redetermination process. (Compl., Ex. A at 1; Compl., Ex. B at 1.)

Plaintiff received a redetermination notice dated June 8, 2010, from the Administration (the "First Redetermination Notice"). (Compl., Ex. B at 1.) The First Redetermination Notice informed plaintiff that the Administration "regularly review[s] the cases of people who get SSI" and that the Administration "need[ed] information from [plaintiff] to make sure [she was] still eligible." (*Id.*) The First Redetermination Notice instructed plaintiff to visit her local Administration office on June 22, 2010, and to bring various documents, including bank statements, pension records, and unemployment compensation payment records (*id.* at 1–2), and warned that the Administration might stop plaintiff's SSI if she did not respond to the request or contact the Administration within thirty days to explain her failure to respond. (*Id.* at 2 .) The First Redetermination Notice also stated that before the Administration stopped her SSI, it would send her another letter to explain its decision and plaintiff's right to appeal that decision, and that plaintiff could continue receiving SSI benefits while the appeal was pending. (*Id.*)

**\*2** Plaintiff alleges that she observed that the First Redetermination Notice was not signed (although the name "Tanya A. Shepherd" and her title, "District Manager," appears on the bottom of page 2), that the "claim number was incomplete," and that the Notice "did not bear in its

heading the type of notice it was supposed to be." (Compl. at 3.) Plaintiff alleges that the lack of a signature on the First Redetermination Notice indicated non-compliance with the Administration's own regulations regarding the formatting of its official notices. [2] Plaintiff also questioned the "provenance and genuineness" of the First Redetermination Notice, and whether it actually came from a "grand jury" that had been "monitoring" her for more than thirty years. (Compl., Ex. C at 1.) Consequently, plaintiff returned to the Administration a photocopy of the First Redetermination Notice together with a letter dated June 11, 2010, in which she requested that the First Redetermination Notice "be signed and returned to her." (Compl. at 3.)

Several weeks later, plaintiff received a notice dated June 28, 2010, from the Administration (the "Second Redetermination Notice"). (*Id.*) The Second Redetermination Notice advised plaintiff that because she had failed to attend the June 22, 2010 appointment, she should appear at the local Administration office on July 8, 2010 for another redetermination appointment. (Compl., Ex. D at 1.) The Second Redetermination Notice warned, "[i]f you do not respond to this request, your SSI payments will stop," and that the Administration "may stop your SSI if you don't respond to this request or contact us within 10 days to tell us why." (*Id.* at 1–2.)

Plaintiff again observed that the Second Redetermination Notice was unsigned, although the name and title of Tanya A. Shepherd appeared at the bottom of page 2. (Compl., Ex. E at 1.) Plaintiff did not think that the Administration sent the Second Redetermination Notice; rather, she thought that it, like the First Redetermination Notice, was "the product of a grand jury." (Compl. at 3; Compl., Ex. E at 1.) Consequently, plaintiff returned to the Administration a copy of the Second Redetermination Notice with a letter dated July 1, 2010, in which she requested a hand-signed copy of the Second Redetermination Notice. (Compl. at 3; Compl., Ex. E at 1.)

By letter dated July 17, 2010, to the attention of "Tanya A. Shepherd/Ms. Lee/et alii [sic] whom this may concern," plaintiff acknowledged receipt of a July 16, 2010 voicemail, from "you," Tanya A. Shepherd, District Manager of the Administration, or Ms. Lee, of the Administration, stating that plaintiff had "five days to present [her]self at the [local] Social Security office or [her SSI] benefits [would] be stopped in August." (Compl., Ex. F at 1.) Plaintiff's letter explained, *inter alia,* that by leaving a voicemail instead of sending a written notification, the Administration had violated her right to receive written notice of eligibility determinations and benefit amount changes. (*Id.* at 1–2.) Plaintiff also forwarded a copy of her July 17 letter to defendant Comissioner by letter dated July 23, 2010. (Compl., Ex. G .)

**\*3** By letter to plaintiff dated August 9, 2010, defendant, by Associate Commissioner Sheryll Ziporkin, explained that the Administration used the redetermination process periodically to ensure that each SSI beneficiary is "still eligible for payment and that the payments are correct." (Compl., Ex. H at 1.) Associate Commissioner Ziporkin also apologized for plaintiff's "unsatisfactory" dealings with the local Administration office, but clarified that the Administration still required plaintiff to appear at her redetermination appointment and advised that her failure to do so could result in a suspension of her SSI benefits. (*Id.*) The letter was signed by Associate Commissioner Ziporkin. (*Id.*)

In response, by letter dated August 13, 2010, plaintiff (a) noted that the Associate Commissioner's August 9, 2010 letter failed to address her complaints, and (b) reaffirmed her intention not to appear for a redetermination appointment "until and unless I receive a written signed letter from a bona fide Administration official requesting such a meeting." (Compl., Ex. I at 1–2.)

On August 16, 2010, the Administration sent plaintiff a Notice of Planned Action, which advised plaintiff of the Administration's intention to stop payments of her SSI benefits in September 2010 due to her failure to appear at a redetermination meeting to provide updated financial information. (Compl., Ex. J at 1.) The Notice of Planned Action provided information regarding plaintiff's right to appeal the decision to terminate plaintiff's SSI benefit payments, and the appeal process. (*Id.* at 2–4.) Specifically, the Notice of Planned Action indicated that plaintiff could appeal by completing Form SSA–561, a "Request for Consideration," within sixty days. (*Id.* at 2.) In addition, the Notice of Planned Action stated that if plaintiff appealed within ten days, she "[would] continue to get the same [SSI] check amount" until the Administration decided her case. (*Id.*)

Plaintiff completed an official Request for Reconsideration and mailed it, together with a supplementary written argument, on August 23, 2010—fewer than ten days after she received the Notice of Planned Action. (Compl. at 5; Ex. K.) Nevertheless, the Administration stopped plaintiff's SSI payments on September 1, 2010. (Compl. at 6.)

Case 1:20-cv-00837-TJM-TWD    Document 13    Filed 02/22/21    Page 22 of 53
Clemmons v. Commissioner of Social Sec., Not Reported in F.Supp.2d (2012)
176 Soc.Sec.Rep.Serv. 673

Plaintiff subsequently mailed two letters—dated September 20, 2010, and October 8, 2010, respectively—to request confirmation that the Administration received her Request for Reconsideration. (Compl. at 6; Exs. L & M.) Plaintiff did not receive any responses regarding her Request for Reconsideration from the Administration. (Compl. at 6; Compl., Ex. M at 1.)

Plaintiff commenced the instant action on March 29, 2011. (*See generally* Compl.) Defendant moved to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)") on grounds that this court lacks subject-matter jurisdiction over the instant action because plaintiff failed to exhaust her administrative appeal remedies and therefore has not received the "final decision" required to obtain judicial review under 42 U.S.C. § 405(g) ("Section 405(g)"). [3] (Def.'s Mem. at 1.) On September 2, 2011, plaintiff filed a motion to strike defendant's motion to dismiss for lack of subject-matter jurisdiction on grounds the court could exercise mandamus jurisdiction pursuant to 28 U.S.C. § 1361 and in any event, the court had jurisdiction to adjudicate her Fifth Amendment due process claim [4] pursuant to 28 U.S.C. § 1331. (ECF No. 20, Plaintiff's Motion to Strike, at 6–7.) On September 16, 2011, the court ordered that it would treat plaintiff's motion to strike as an opposition to defendant's motion to dismiss, or, in the alternative, as a cross-motion for judgment in plaintiff's favor.

## DISCUSSION

### I. *Standard of Review*

#### A. *Pro Se Submissions*
 **\*4** Plaintiff has filed her complaint *pro se.* It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir.2006) (citing *Pabon v. Wright,* 459 F.3d 241, 248 (2d Cir.2006)). The court reviews plaintiff's submissions in light of these considerations.

#### B. *Motions to Dismiss Pursuant to* Rule 12(b)(1)

In deciding defendant's motion to dismiss pursuant to Rule 12(b)(1), the court "must accept as true all material factual allegations in the complaint," but should not draw inferences from the complaint that are favorable to plaintiffs." *Attica Cent. Schs .,* 386 F.3d at 110. In addition, the court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but ... may not rely on conclusory or hearsay statements contained in the affidavits." *Id.* "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.,* 426 F.3d 635, 638 (2d Cir.2005).

### II. *Subject–Matter Jurisdiction*

#### A. *Subject–Matter Jurisdiction Pursuant to* Section 405(g)
District courts lack subject-matter jurisdiction over Social Security claims in the absence of a final decision by the Commissioner. *Dietsch v. Schweiker,* 700 F.2d 865, 867 (2d Cir.1983); *see Bamberg v. Astrue,* No. 10–CIV–6348, 2011 WL 4000898, at *4 (S.D.N.Y. Sept. 8, 2011) (Report and Recommendation), *adopted without opinion* (S.D.N.Y. Sept. 8, 2011) ("In the absence of a final decision by the Commissioner, the Court does not typically have subject-matter jurisdiction over a plaintiff's claim under the Social Security Act"); *see also Smith v. Barnhart,* 293 F.Supp.2d 252, 254 (E.D.N.Y.2003) ("A district court's subject matter jurisdiction over the denial of Social Security disability benefits is limited.").

Section 405(g) of the Social Security Act provides that:

> Any individual, after a final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

In addition, 42 U.S.C. § 405(h) ("Section 405(h)") provides:

> The findings and decision of the [Commissioner] after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the [Commissioner] shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the [Commissioner], or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.

**\*5** "Section 405(g) ... has been interpreted to require that, generally speaking, administrative procedures must be exhausted before judicial review is available." *Dietsch, 700 F.2d at 867.* The administrative procedures that a plaintiff must exhaust include "an initial determination, a reconsideration of that determination, a hearing decision by an ALJ, and an Appeals Council review." *Gonzalez ex rel. Guzman v. Sec'y of the Dep't of Health & Human Servs., 360 F. App'x 240, 245 (2d Cir.2010)* (citing 20 C.F.R. § 416, subpt. N).

In certain circumstances, however, district courts have subject-matter jurisdiction over Social Security benefits claims brought by plaintiffs who have not exhausted the administrative process.

### B. *Mandamus Jurisdiction Pursuant to 28 U.S.C. § 1361*

#### 1. *Legal Standard*

Although Sections 405(g) and (h) of the Social Security Act prevent district courts from hearing Social Security actions brought under 28 U.S.C. §§ 1331 or 1346 absent a final administrative decision as discussed *supra,* the Second Circuit has held that the Social Security Act does not bar federal courts from exercising subject-matter jurisdiction pursuant to 28 U.S.C. § 1361 ("the Mandamus Act"), [5] which grants district courts "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. *See City of New York v. Heckler, 742 F.2d 729, 739 (2d Cir.1984), aff'd sub nom. Bowen v. City of New York, 476 U.S. 467, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986)* (internal citations omitted) ("Although the Supreme Court has on numerous occasions declined to decide whether [Section 405(h) ] bars mandamus jurisdiction over claims arising under the [Social Security] Act, it is settled in this and other circuits that, notwithstanding the sweeping language of [Section 405(h) ], mandamus jurisdiction is available."). [6]

The Second Circuit has further found that the Mandamus Act "provides jurisdiction to review otherwise unreviewable procedural issues not related to the merits of a claim for benefits." *Dietsch, 700 F.2d at 868.* Specifically, mandamus jurisdiction only applies where the plaintiff's claim satisfies three requirements: "(1) [plaintiff has] a right to have the act performed, (2) the defendant is under a clear nondiscretionary duty to perform the act requested, and (3) plaintiff has exhausted all other avenues of relief." *Heckler, 742 F.2d at 739. See also Jones v. Astrue, 526 F.Supp.2d 455, 459 (S.D.N.Y.2007)* (same).

#### 2. *Plaintiff's Claim Under Mandamus Jurisdiction*

Mandamus jurisdiction is appropriate here because plaintiff requests "review [of an] otherwise unreviewable procedural issu[e] not related to the merits of a claim for benefits." *Dietsch, 700 F.2d at 868.* Moreover, the court finds that plaintiff's claim satisfies the three requirements set forth in *Heckler, 742 F.2d at 739.*

**\*6** First, the plaintiff has a right to a reconsideration and has established to the court's satisfaction that she timely-invoked that right. (Compl. at 5, Ex. K). Federal regulations provide the basis for plaintiff's right to reconsideration where the request is timely filed. Pursuant to 20 C.F.R. § 416.1408, an SSI recipient who is "dissatisfied with the initial determination ... may request that [the Administration] reconsider it." The Notice of Planned Action informed plaintiff that she could avail herself of her right to

reconsideration by filing a Request for Reconsideration within sixty days, and that she would continue to receive SSI benefits if she filed that request within ten days. (Compl., Ex. J at 2.) Plaintiff submitted her Request for Reconsideration on August 23, 2010, fewer than ten days after receiving the Notice of Planned Action. (Compl. at 5; Compl., Ex. K at 1.) Indeed, defendant has agreed to "accept the document appended as Ex. K to [the] Complaint, as a timely filed request for reconsideration and issue a determination." (ECF No. 33, Defendant's Reply Memorandum of Law ("Reply Mem.") at 2.)

Second, the Administration has a non-discretionary duty to reconsider its initial decision upon plaintiff's timely submission of a request for reconsideration because the Administration "is bound by [its] own regulations." *Sinatra v. Heckler,* 566 F.Supp. 1354, 1358 (E.D.N.Y.1983); *see Weiss,* 859 F.Supp. at 62 (defining the Administration's obligation to provide a reconsideration, when timely requested, as a "duty"); *see also Ford v. Shalala,* 87 F.Supp.2d 163, 166 (E.D.N.Y.1999) ("A claimant who disagrees with the initial determination is entitled to seek reconsideration from the agency.") (citing 20 C.F.R. §§ 416.1407, 1408); *see generally* 20 C.F.R. § 416.1400, et seq. (describing the administrative hearing process as required by federal law).

Finally, the defendant asserts that plaintiff has failed to exhaust her administrative remedies and that the Commissioner has not waived exhaustion. (Reply Mem. at 2–4.) Plaintiff, however, has had no opportunity to exhaust the administrative appeals process because the Administration has not fulfilled its obligation to review plaintiff's appeal in light of her timely Request for Reconsideration. *See, e.g., Weiss,* 859 F.Supp. at 62 (plaintiff had no other avenue of appeal besides federal court because Administration refused to address his Request for Reconsideration).

Accordingly, the court finds that mandamus jurisdiction is proper here and the court denies defendant's motion to dismiss for lack of subject-matter jurisdiction. Instead, the court remands this action to the Commissioner for further administrative proceedings. Further, the Court denies plaintiff's motion to strike in light of the court's exercise of mandamus jurisdiction and the remand of this action, which addresses her due process allegations.

### CONCLUSION

For the reasons above, defendant's motion to dismiss is denied, and this matter is remanded to the Commissioner for further administrative proceedings. Moreover, the court orders defendant to (1) resume payment of plaintiff's SSI benefits, and (2) retroactively resume payment of her previously terminated benefits pending the Administration's decision on plaintiff's initial appeal, per 20 C.F.R. § 416.1336 ("If appeal is filed within 10 days after the individual's receipt of the notice, the payment shall be *continued or reinstated at the previously established payment level ...* until a decision on such initial appeal is issued, unless the individual specifically waives in writing his right to continuation of payment.") (emphasis added).

 **\*7**  The Clerk is respectfully directed to serve a copy of this motion on plaintiff and note service in the docket.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 1107661, 176 Soc.Sec.Rep.Serv. 673

---

### Footnotes

1      The following facts are taken from the complaint and its exhibits and are not findings of fact by the court. *See J.S. ex rel. N.S. v. Attica Cent. Sch.,* 386 F.3d 107, 110 (2d Cir.2004) (In deciding defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), the court "must accept as true all material factual allegations in the complaint," but should not draw inferences from the complaint that are favorable to plaintiffs).

2    Plaintiff attached to her complaint as Exhibit A an Administration webpage entitled, "Understanding Supplemental Security Income: Social Security Notices and Letters—2010 Edition," which explains that Notices from the Administration have certain features, including "a heading that always includes the agency name, and usually the name of the Social Security program, and the type of notice for example: Social Security Administration, Supplemental Security Income, Notice of Change in Payment"; "a Social Security telephone number and/or address"; and "a signature and title of a Social Security official." (Compl., Ex. A at 1.) Plaintiff did not cite to any regulation that requires a hand-signed signature. Moreover, the court notes that in this day and age of technological progress, the use of electronic signatures on official documents has become commonplace. *See, e.g.,* Fed.R.Civ.P. 5(d)(3) (providing that a court may, by local rule, "allow papers to be ... *signed* ... by electronic means that are consistent with any technical standards established by the Judicial Conference of the United States").

3    42 U.S.C. § 1383(c)(3) applies the Section 405(g) requirements to SSI benefits.

4    Plaintiff asserts that "the refusal of the [Administration] to sign its notices, particularly when asked to do so, violated plaintiff's right to due process." (ECF No. 20, Plaintiff's Motion to Strike, at 7.)

5    Plaintiff also notes in her complaint that the Social Security Act does not bar the establishment of mandamus jurisdiction. (Compl. at 1 & n. 1.)

6    This court may also possess jurisdiction under Section 405(g). In *Mathews v. Eldridge,* the United States Supreme Court found that "cases may arise where a claimant's interest in having a particular issue resolved promptly is so great that deference to the agency's judgment [over the meaning of "final"] is inappropriate." 424 U.S. 319, 330, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). The Supreme Court held that where plaintiff's "constitutional challenge is entirely collateral to his substantive claim of entitlement," the very act of denying Social Security benefits to a plaintiff "constitutes a final decision for purposes of § 405(g) jurisdiction over his constitutional claim." *Id.* at 330–32 (citations omitted). Thus, *Mathews* holds that where, as here, there is a collateral constitutional challenge, the federal courts have the authority to read a decision to terminate benefits as the "final decision" in finding subject-matter jurisdiction appropriate under Section 405(g). However, as this court has jurisdiction under the Mandamus Act, the court need not decide the issue as to whether jurisdiction is also proper under Section 405(g). *See, e.g., Weiss v. Sec'y of U.S. Dep't of Health & Human Servs.,* 859 F.Supp. 58 (E.D.N.Y.1994) (noting that the Supreme Court recognizes "an exception to the exhaustion requirement for [ Section 405(g) ] jurisdiction in situations where a constitutional due process challenge is raised," and that "[b]ecause plaintiff does not raise such a claim and because, as discussed below, this Court finds that mandamus jurisdiction lies, this Court need not reach this issue." *Id.* at 61 n. 2; *see also White v. Mathews,* 559 F.2d 852, 856 n. 4 (2d Cir.1977) (same); *Bamberg,* 2011 WL 4000898, at *5 (same).

---

**End of Document**        © 2021 Thomson Reuters. No claim to original U.S. Government Works.

2014 WL 1909363
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Ena DOBSON, Plaintiff,
v.
COMMISSIONER OF SOCIAL
SECURITY, Defendant.

No. 10 Civ. 6167(KPF).
|
Signed May 12, 2014.

*OPINION AND ORDER*

KATHERINE POLK FAILLA, District Judge.

**\*1** Plaintiff Ena Dobson, proceeding *pro se,* brings this action against the Commissioner of Social Security [1] (the "Commissioner" or "Defendant") alleging nonreceipt of her Social Security retirement checks from 2001 to 2005. Pending before the Court is Defendant's motion to dismiss the Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim pursuant to Rule 12(b)(6), or, in the alternative, for summary judgment pursuant to Rule 56. Defendant's motion is granted. As explained more fully below, the Commissioner's determination is not eligible for administrative or judicial review and Plaintiff may not maintain her suit here.

**BACKGROUND** [2]

**A. Factual Background**

**1. Plaintiff's Social Security Retirement Benefits and Previous Interactions with SSA**

The following facts are undisputed or, with respect to the issues on which Defendant has moved, construed in the light most favorable to Plaintiff.

Plaintiff Ena Dobson began receiving monthly Social Security benefit checks when she reached the age of 65. (Compl., Attachment 1). On or about May 20, 2008, Plaintiff

visited a local Social Security Administration ("SSA") office and claimed that she had not received her benefit checks since 2001, a position she maintained despite being shown a number of documents purportedly indicating otherwise. (Infiesta Decl. ¶ 3). An SSA employee requested that photocopies of one of Plaintiff's benefit checks for each year from 2001 to 2008 be sent to Plaintiff. (*Id.* at Ex. 1).

On September 18, 2008, Plaintiff contacted the SSA and indicated that she had received information explaining that the SSA had withheld her benefit payments from 2005 to 2008 to compensate for a previous overpayment. She maintained nonetheless that she had received no benefit checks from 2001 to 2004. (Infiesta Decl. ¶ 4 & Ex. 1; Def. 56.1 ¶ 2). [3] Plaintiff then visited a local SSA office on or about June 5, 2009, where she met with an employee identified in the record only as N. Tahirhagos. (*See* Infiesta Decl. Ex. 1). Plaintiff again complained that she had not received her monthly Social Security benefit checks from 2001 through 2004. (*Id.* at ¶ 5 & Ex. 1). In particular, Plaintiff indicated she had not been satisfied with the outcome of prior complaints on this matter and demanded proof that SSA in fact sent the payments to her and that she in fact had cashed them. (*Id.*). The SSA employee Tahirhagos gave Plaintiff a "Request for Reconsideration" form to complete and recorded the following remarks internally:

> The Laconia office apparently has already processed the nonreceipt complaints but [Plaintiff] does not agree with the outcome so far. She insisted to file a recon[sideration] but I could not give her any valid determination date.... I am filing a recon[sideration] for her for your review so that we can go from there.

**\*2** (*Id.* at Ex. 1). [4]

Ultimately, Tahirhagos does not appear to have filed anything on Plaintiff's behalf; instead, Plaintiff filed a Request for Reconsideration form on or about July 2, 2009, indicating that she "did not receive any check from [illegible]/ 2001 through 12/2004." (Infiesta Decl. Ex. 2). Plaintiff continued, "My first retirement check was received in March 2008. I am aware of the money kept for overpayment." (*Id.*). In a letter dated January 13, 2010, Anne Jacobosky, SSA Assistant Regional Commissioner, Processing Center Operations, responded to Plaintiff's Request for Reconsideration. (*Id.* at Ex. 3 (the "Jacobosky Letter")). This letter advised Plaintiff that the SSA interpreted her Request for Reconsideration merely as a request for further information. If Plaintiff actually wished to request a reconsideration, the letter continued, she should

contact any SSA office within 30 days. (Jacobosky Letter ¶ 1; Infiesta Decl. ¶ 7).

At some point during this sequence of events, Plaintiff filed with the SSA a signed "Claim Against the United States for the Proceeds of a Government Check." (Infiesta Decl. Ex. 4).[5] This form does not reference any specific check or checks but, in response to the questions on the form, Plaintiff indicated that she received, signed, and cashed "this check." (*Id.*). Plaintiff further indicated that the check was cashed at a "Check Cashing Place," and that she "[c]annot [r]emember" if someone else deposited this check to an account she could use. (*Id.*). Julio Infiesta, in his sworn affidavit, stated that "SSA took no action regarding this claim, because plaintiff's responses indicated that she received, signed and cash[ed] the check or checks being complained about." (*Id.* at ¶ 11).

On or about February 4, 2010, Plaintiff again visited a local SSA office; records indicate that an SSA employee showed Plaintiff copies of checks from the disputed period indicating that Plaintiff had cashed them. (Infiesta Decl. ¶ 8 & Ex. 1). Plaintiff was not satisfied with this proof and insisted on filing a Request for Reconsideration. (*Id.* at Ex. 1). Plaintiff visited an SSA office for a fourth time on or about May 13, 2010, insisting once again that she had not received her benefits for the years 2001 through 2004. (*Id.*).

SSA internal documentation dated July 6, 2010, indicates that the agency sent worksheets to Plaintiff identifying monthly benefits that had been withheld to recoup a previous overpayment to Plaintiff. (Infiesta Decl. ¶ 9 & Ex. 1). This documentation notes that Plaintiff's request for reconsideration dated February 4, 2010, was slated for processing. (*Id.*). SSA has not, as of this writing, processed Plaintiff's request, apparently "because SSA had information showing that [P]laintiff was paid the benefits she claimed she had not received." (Def. 56.1 ¶ 8).

Specifically, the SSA obtained information from the Treasury Check Information System showing that Plaintiff had received monthly payments via direct deposit to her HSBC Bank account from January 1, 2001, through July 2, 2004. (Infiesta Decl. Ex. 5). The record indicates that these direct deposits were made to an account with an account number ending in 7660 and with the payee name "ENA DOBSON." (*Id.*). The record also contains copies of monthly benefit checks from August 9, 2004, through December 16,

2004, each made out to Ena Dobson and endorsed with a signature strongly resembling Plaintiff's name. (*Id.* at Ex. 6).

### 2. Procedural Background

**\*3** Plaintiff filed the Complaint in this action on August 17, 2010, alleging nonreceipt of her Social Security retirement checks "for four year[s] from 2001–2005." (Compl., Attachment 1). On March 28, 2011, after appropriate extensions of time to respond to the Complaint, Defendant filed a motion to dismiss for lack of subject matter jurisdiction and failure to state a claim or, in the alternative, for summary judgment. (Dkt.# 12). Plaintiff wrote the Court on May 31, 2011, asking for an extension of time to oppose Defendant's motion so that she could seek representation; she was granted until July 29, 2011. (Dkt.# 16).[6] Plaintiff filed no opposition by this deadline. On September 12, 2011, Plaintiff filed an application for *pro bono* counsel. (Dkt. # 18). This application was not served on Defendant but, noting that the Government typically does not take a position on requests for *pro bono* counsel in cases of this type, the Court ordered the application to be docketed despite its procedural errors. (*Id.*).

Twenty months later, Plaintiff having made no contact with the Court in the interval, the Court scheduled a conference for May 22, 2013, and Plaintiff did not appear. (Dkt.# 22). In response, the Court issued an order for Plaintiff to appear at a hearing to show cause demonstrating why the Complaint should not be dismissed for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b). (Dkt.# 23). Plaintiff wrote the Court the following week, advising that she had not received notice of the May 22, 2013 conference. (Dkt. # 24).

Shortly thereafter, the Court issued an order adjourning the show cause hearing from June 28, 2013, to July 25, 2013. (Dkt.# 26). This order was returned as undeliverable. The Court, making accommodations for Plaintiff's *pro se* status, exerted substantial effort to locate a valid address for Plaintiff. An order adjourning the show cause hearing to August 22, 2013, was mailed on July 23, 2013.

Both parties appeared at the hearing finally held on August 22, 2013. At that hearing the Court ordered Plaintiff to file a response to Defendant's motion by September 30, 2013. The Court also explained that Plaintiff could, if she chose, file a new application for *pro bono* counsel, but that it was impossible to guarantee that any *pro bono* lawyer would accept her case. Plaintiff filed a renewed application for *pro bono* counsel on September 5, 2013. By Order dated

September 11, 2013, the Court granted Plaintiff's application but reminded her that whether a lawyer would choose to represent her was impossible to predict, and once again required her to file an opposition to Defendant's long-pending motion by September 30, 2013. (Dkt.# 31).

By standing order of this District occasioned by the shutdown of the federal government, this case was then stayed pending the restoration of funding for the Department of Justice's operations. No response from Plaintiff was forthcoming in the interim, despite the expiration of Plaintiff's time to oppose the motion, many times extended. When that stay was lifted, the Court issued an order on October 17, 2013, granting a final extension of Plaintiff's time to oppose to November 1, 2013, in an effort to offer Plaintiff every possible courtesy. (Dkt.# 33). On October 31, 2013, Plaintiff filed an affirmation in opposition to Defendant's motion. (Dkt.# 34). On December 18, 2013, Defendant submitted a letter to the Court in lieu of a reply to Plaintiff's affirmation in opposition to Defendant's motion. (Dkt.# 35).

### DISCUSSION

#### A. Applicable Law

**1. Pro Se Parties**

 **\*4**  It is well established that the submissions of a *pro se* litigant are to be construed liberally and interpreted " 'to raise the strongest arguments that they *suggest.*' " *Smith v. Levine,* 510 F. App'x 17, 20 (2d Cir.2013) (summary order) (quoting *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir.2006) (emphasis in *Triestman* )). Put another way, "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (internal quotation marks omitted); *cf. Fed. Rule Civ. P. 8(e)* ( "Pleadings must be construed so as to do justice.").

**2. Motions to Dismiss Pursuant to  Rule 12(b)(1)**
A federal court is a court of limited jurisdiction and, in order to hear a case, must ascertain whether it has jurisdiction over the underlying subject matter of the action. *Bender v. Williamsport Area Sch. Dist.,* 475 U.S. 536, 541 (1986) ("Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant

thereto."). This determination "is a threshold inquiry and a claim is properly dismissed for lack of subject matter jurisdiction under  Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Austl. Bank Ltd.,* 547 F.3d 167, 170 (2d Cir.2008) (citation omitted).

When a defendant brings such a motion, "[t]he plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. System, Inc.,* 426 F.3d 635, 638 (2d Cir.2005); *see also Makarova v. United States,* 201 F.3d 110, 113 (2d Cir.2000); *Malike v. Meissner,* 82 F.3d 560, 562 (2d Cir.1996). And although "[t]he court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff, ... jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison,* 547 F.3d at 170 (internal quotation marks and citations omitted). Thus, in resolving a  Rule 12(b)(1) motion, a district court "may refer to evidence outside the pleadings." *Makarova,* 201 F.3d at 113.

**3. District Court Jurisdiction Over SSA Decisions**

**a. United States as Sovereign**
" '[T]he United States, as sovereign, is immune from suit save as it consents to be sued ... and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.' " *Lehman v. Nakshian,* 453 U.S. 156, 160 (1981) (quoting *United States v. Testan,* 424 U.S. 392, 399 (1976)) (second alteration in *Testan* ). And when the Government consents to be sued, such consent must be strictly observed and construed narrowly. *United States v. Nordic Village, Inc.,* 503 U.S. 30, 34 (1992).

**b. Title II and XVI of the Social Security Act**
 **\*5**  Title II and Title XVI of the Social Security Act (the "Act") govern federal old-age, survivors, and disability insurance benefits and supplemental security income for the aged, blind, and disabled, respectively. *See* 42 U.S.C. §§ 401–434 (Title II); 42 U.S.C. §§ 1381–1385 (Title XVI). Claims arising under Title II or Title XVI, such as

a claim for disability insurance benefits or Social Security retirement benefits, may not be heard by the federal courts except as explicitly permitted by the Act. 42 U.S.C. § 405(g), (h). Section 405(g) states:

> Any individual, *after any final decision of the Commissioner of Social Security made after a hearing to which he was a party,* irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow. Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business, or, if he does not reside or have his principal place of business within any such judicial district, in the United States District Court for the District of Columbia.

42 U.S.C. § 405(g) (emphasis added). And Section 405(h) clarifies that the remedy provided in Section 405(g) is exclusive: "No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided." 42 U.S.C. § 405(h).

Section 405(g) precludes judicial review absent a "final decision." *See Califano v. Sanders,* 430 U.S. 99, 108 (1977). This exhaustion requirement of a "final decision of the Commissioner of Social Security made after a hearing," 42 U.S.C. § 405(g), has been held to comprise two elements: (i) the jurisdictional, non-waivable requirement that a claim for benefits has been presented to the Commissioner, and (ii) the non jurisdictional, waivable requirement that the administrative remedies prescribed by the Commissioner

have been exhausted. *See, e.g., Mathews v. Eldridge,* 424 U.S. 319, 328–30 (1976).

**i. The Jurisdictional Requirement**

The first requirement, that a claim for benefits be presented, is "purely jurisdictional in the sense that it cannot be waived by the Commissioner in a particular case." *Mathews,* 424 U.S. at 328 (internal quotation marks omitted). This requirement is easily satisfied and courts spend little time addressing it. *See, e.g., Jones v. Califano,* 576 F.2d 12, 18 (2d Cir.1978) ( "It is undisputed that appellants, by filing claims with the SSA, have satisfied the non-waivable requirement."); *Bamberg v. Astrue,* No. 10 Civ. 6348(CM)(THK), 2011 WL 4000898, at *4 (S.D.N.Y. Sept. 8, 2011) ("Plaintiff has presented both issues to the Commissioner of Social Security—through his various requests for reconsideration and his letter dated August 2, 2010. The nonwaivable requirement is therefore satisfied.").

**ii. The Exhaustion Requirement**

**\*6** The second requirement is that the Commissioner render a "final decision" so as "to satisfy the statutory exhaustion requirement." *Mathews,* 424 U.S. at 330 (internal quotation marks omitted). This requirement is "waivable" or, as it has been sometimes put, not strictly jurisdictional, because the Commissioner can waive it whenever she "satisfies [herself], at any stage of the administrative process, that no further review is warranted either because the internal needs of the agency are fulfilled or because the relief that is sought is beyond [her] power to confer." *Id.* at 330.

Even when the Commissioner does not consent to waiver of the requirement, however, limited circumstances exist in which a court may excuse nonexhaustion despite the Commissioner's objection. *Mathews v. Diaz,* 426 U.S. 67, 76–77 (1976). Courts have identified a number of circumstances in which failure to exhaust may be excused, including situations where (i) the claim at issue is collateral to a demand for benefits; (ii) exhaustion would be futile; (iii) plaintiffs would suffer irreparable harm if required to exhaust; and (iv) the claim presents a constitutional question unsuited to resolution by administrative review. *Mathews,* 424 U.S. at 330–32. Beyond these explicit list of circumstances in which nonexhaustion is not fatal to a claimant's quest for

judicial review, the Supreme Court has explained that the decision whether to waive exhaustion "should also be guided by the policies underlying the exhaustion requirement." *Bowen v. City of New York,* 476 U.S. 467, 484 (1986).

### iii. SSA Administrative Review

Congress purposely left the term "final decision" undefined in the Act, leaving the meaning of the term for the Commissioner to "flesh out by regulation." *Weinberger v. Salfi,* 422 U.S. 749, 767 (1975) (citing 42 U.S.C. § 405(a)). The Commissioner's regulations provide that a claimant must complete a four-step administrative review process in order to receive a judicially reviewable final decision regarding claims under Title II or Title XVI of the Act. 20 C.F.R. §§ 404.900(a), 416.1400(a). [7] The four steps are: (i) initial determination; (ii) reconsideration; (iii) Administrative Law Judge ("ALJ") decision; and (iv) Appeals Council review. *See id.* §§ 404.900, 416.1400. [8] If at any point in pursuing administrative review a claimant fails to take the next step within the time allotted —generally 60 days—the last rendered decision becomes binding and, absent a showing of good cause, precluded from judicial review. *See* 20 C.F.R. §§ 404.900(b), 404.921, 416.1400(b), 416.1421.

An "initial determination," the first step in the administrative review process, is simply defined as a "determination[ ] [the SSA] make[s] that [is] subject to administrative and judicial review." 20 C.F.R. §§ 404.902, 416.1402. [9] The Commissioner's regulations explain that administrative actions that are not initial determinations may still be reviewed by the SSA, but are not subject to administrative or judicial review. *Id.* §§ 404.903, 416.1403. The regulations proceed to provide illustrative, but not exhaustive, lists of administrative actions that are initial determinations and administrative actions that are not initial determinations. *See id.* §§ 404.902, 404.903, 416.1402, 416.1403.

**\*7** Allowing the SSA to conduct the full review process set out in the Commissioner's regulations prevents "premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review." *Weinberger,* 422 U.S. at 765.

### B. Application

### 1. The Action Challenged Was Not an Initial Determination

Defendant principally moves to dismiss the Complaint or, in the alternative, for summary judgment on the grounds that this case does not present a judicially reviewable decision of the Commissioner. Defendant argues that the agency's determination on an allegation of nonreceipt of monthly benefit payments is not an initial determination subject to the administrative review process or court review. (Infiesta Decl. ¶ 14). The Court agrees and thus dismisses this action; the Court lacks jurisdiction to hear it. *See, e.g., Colman v. Sec. of HHS,* No. 94 Civ. 6282(MAT), 1994 WL 808125, at \*2 (W.D.N.Y. Nov. 28, 1994) ("In this case, plaintiff seeks judicial review of the SSA's decision not to grant him an extension of time to seek reconsideration.... The SSA's decision is not reviewable by this Court and plaintiff has raised no colorable constitutional claim which would otherwise confer subject-matter jurisdiction upon this Court.").

An initial determination is the first of four steps required to exhaust the administrative agency review process and produce a judicially reviewable final decision. 20 C.F.R. §§ 404.900, 416.1400; *see Califano v. Sanders,* 430 U.S. 99, 102 (1977) ("The Act and regulations thus create an orderly administrative mechanism, with district court review of the final decision of the [Commissioner]."). "Administrative actions that are not initial determinations may be reviewed by [SSA], but they are not subject to the administrative review process ... and they are not subject to judicial review." 20 C.F.R. § 404.1403(a); *see Long Island Ambulance, Inc. v. Thompson,* 220 F.Supp.2d 150, 160 (E.D.N.Y.2002) ("The first agency action at issue in this case is the decision to suspend Medicare payments to LIA. According to the Medicare regulations, such a decision is not a final agency decision. As such, this Court does not have subject matter jurisdiction to hear the plaintiffs' challenge to the decision." (internal citations omitted)).

As noted, the Commissioner's regulations provide non-exhaustive lists of agency decisions that are initial determinations and agency decisions that are not initial determinations. 20 C.F.R. §§ 416.1402, 416.1403. Neither list specifically categorizes a determination concerning an allegation of nonreceipt of monthly benefit payments. Plaintiff might argue that her case is analogous

to a determination concerning "[a]ny overpayment or underpayment of your benefits," which the regulations classify as constituting an initial determination subject to administrative and judicial review. *See id.* § 416.902(j). An allegation of nonreceipt of monthly payments could conceivably be considered an allegation of underpayment of benefits.

**\*8** But that analogy is flawed, and the flaw demonstrates exactly why this determination is not an "initial determination" for the purposes of the Court's review. An allegation of underpayment of benefits, like the other determinations listed in § 404.902 and its Title XVI analogue, § 416.1402, are substantive determinations related to a claimant's eligibility for benefits and how those benefits should be calculated and applied. Those determinations relate, for example, to whether the SSA properly determined a claimant's benefits status and did everything legally required to ensure that a beneficiary actually received and enjoyed the payments to which she was entitled. *See, e.g.,* 20 C.F.R. § 404.902(a) ("Your entitlement or your continuing entitlement to benefits"); *id.* § 416.1402(o) ("Whether we were negligent in investigating or monitoring or failing to investigate or monitor your representative payee, which resulted in the misuse of benefits by your representative payee."). It is sensible that such actions are subject to extensive, multi-tiered review. They impact the very status of claimants and beneficiaries with respect to the SSA. They are considered in the context of clear, well-codified standards, the proper application of which can be assessed on review. And though determined against the facts of a specific claim or dispute, they ultimately require the exercise of an analytical judgment that can be in error and, when erring, should be corrected.

The actions specifically identified as not initial determinations, in contrast, are quite different. They are actions related to the administration of SSA's affairs, not substantive determinations of a claimant's status and the nature of his benefits. These actions include, for example, determining the amount of withholding appropriate to recover an overpayment of benefits, 20 C.F.R. § 404.903(e), or denying a request to use an expedited appeals process, *id.* § 416.1403(a)(4). To be clear, actions insulated from judicial review are not without meaningful effect on claimants: they include suspending the payment of benefits when investigation into potential offset income is necessary, *id.* § 404.903(a), determining whether provisional benefits should be paid, *id.* § 404.903(w), denying requests to reopen previous final determinations, *id.* § 416.1403(a)(5), and determining

how to effect recovery of overpayments, *id.* § 416.1403(a) (17), (19). But irrespective of how beneficiaries may be affected by such decisions, their character is fundamentally different from those actions identified as eligible for review. They are focused on issues such as the timing of the receipt of benefits or the mechanism by which overpayments or offsets are withheld or collected. *See* 20 C.F.R. § 404.903(a), (b), (e), (h), (m), (p), (s), (u), (v), (w). They relate to the convenience for both parties of specific approaches to the claim and benefits process. *See id.* § 404.903(i), (j), (k), (x), (y), (z).

**\*9** In sum, actions that are not "initial determinations" are largely factual and procedural, rendered with little if any guidance from bodies of regulatory, statutory, and decisional law. Neither an ALJ, the Appeals Counsel, nor a court asked to review such a determination could profitably assess the process by which it was reached except by coming to a new, independent decision about what should have been done in a particular situation. But the review provided for by the Social Security Act and the Commissioner's regulations is not designed simply to second-guess decisionmakers one step earlier in the process. It is designed to determine whether objective standards were correctly and justly applied. As Judge Friendly explained in reference to the plaintiffs in a Social Security appeal 30 years ago,

> Mercer's and Havens' claims for Medicare benefits were the paradigm of those where resort to the internal procedures of the SSA should be required.... Mercer and Havens were asking [the Commissioner to enforce his regulations]. As a result, not only did they receive the benefits they claimed but the procedural defaults of which they complained were acknowledged to be deviations from established agency regulations and were corrected.

*Mercer v. Birchman,* 700 F.2d 828, 832 (2d Cir.1983).

Some SSA actions that have real impact on claimants and beneficiaries are simply not eligible for administrative and judicial review. And though indisputably frustrating for

the individuals involved, and even for the administrators and judges charged with enforcing the Commissioner's regulations, there are good reasons for that limitation. Opening every decision of the Commissioner up to the full process of administrative and judicial review would come at a very high price. It would dramatically slow the Commissioner's ability to process claims and administer the distribution of benefits to entitled individuals. It would impose significant new costs on the SSA as a whole and, consequently, on claimants and beneficiaries who in turn received less efficient resolution of their claims and disputes. And it would clog the courts with multiple appeals for review of agency actions that are fundamentally procedural in nature, arising not from grievances regarding entitled payments, but from the SSA's conduct of issues entirely separate from those grievances.

Plaintiff's claim here should, for the same reasons, be immune from administrative and judicial review. Careful examination of the content of that claim reveals that it is more akin to the actions identified in § 404.903 and § 416.1403 than to those identified in § 404.902 and § 416.1402, and so appropriately beyond the scope of the review process. Unlike, for example, a dispute over an alleged underpayment of benefits, *see* 20 C.F.R. § 404.902(j), Plaintiff here does not claim money to which the Commissioner insists she is not entitled. To the contrary, Plaintiff alleges that she did not *receive* money to which all parties agree she was entitled and which the Commissioner maintains was properly distributed. This is a critically different kind of complaint: not that the SSA applied its regulations incorrectly or violated the law or infringed on Plaintiff's rights and entitlements, but that a certain amount of money was misplaced on its way from the SSA to Plaintiff.

 **\*10** Viewed in this light, it makes sense that the SSA does not regard decisions regarding whether individual beneficiaries are owed replacement checks or direct-deposit transfers as initial determinations for purposes of review. A decision regarding whether to provide a replacement check is not a determination regarding the beneficiary's status or the SSA's payment obligations. It is a straightforward investigation into the history of specific checks or wire transfers. Just as with the actions explicitly excluded from the review process by regulation, Plaintiff's application here is exclusively factual, focused only on whether specific payments were made successfully. Resolving this dispute requires no more than confirming whether a check was appropriately cashed or a specific electronic transfer properly deposited. The Commissioner is eminently more capable

of conducting such confirmation than the Court. What is more, there are simply no useful standards to apply in assessing whether such confirmation, if classed as an initial determination, was properly made. And the Court, on review, could do no more than conduct an independent assessment of the record regarding the contested checks or wire payments and make separate factual findings as to each. [10] This is simply not the kind of decision that should be subject to the full panoply of review mechanisms.

As the Commissioner correctly hastens to point out, this is not to say that beneficiaries claiming nonreceipt of certain payments have no way to vindicate their grievances. The SSA's Program Operations Manual System ("POMS") sets out the process by which SSA employees evaluate requests for replacement checks in circumstances such as these. *See* Schweiker v. Hansen, 450 U.S. 785, 789 (1981) (noting that the POMS "is not a regulation. It has no legal force, and it does not bind the SSA. Rather, it is a 13–volume handbook for internal use by thousands of SSA employees, including the hundreds of employees who receive untold numbers of oral inquiries like respondent's each year."). Defendant, in its brief, submits that the relevant POMS provision, NL 03001.025, [11] explains "that the beneficiary who claims non-receipt is sent a notice of the determination with right to seek review, but not grant of further review." (Def.Br.7). The cited provision is admittedly far from clear. Nor did Defendant offer much direction on what portion of POMS NL 03001.025 could be read to support its assertion.

However, on review, the Court agrees with Defendant's characterization. NL 03001.025 instructs SSA employees, when responding to a request for check replacement, to use the following paragraph when concluding that the beneficiary is not entitled to a replacement check:

> If you disagree with our decision, you can ask us to look at the information that we have about the check(s) again. A person who did not look at this information the first time will review it. We will also consider any new facts you have. Contact us right away, if you want us to review this information. POMS NL 03001.025.B, *available at* https:// secure.ssa.gov/apps10/ poms.nsf/lnx/0903001025 (last visited May 12, 2014). This language does, as Defendant suggests, implicitly indicate that the SSA views decisions regarding check replacements as decisions that "may be reviewed by [the SSA], but ... [are] not subject to the administrative review process ... [or] to judicial review." 20 C.F.R. § 404.903. If the

converse were true, the relevant paragraph would inform the beneficiary of her right to seek a reconsideration and ultimately to receive a hearing before an Administrative Law Judge. That this paragraph makes no reference to the review process bolsters Defendant's characterization of this claim as beyond administrative and judicial review.

**\*11** Several acts of SSA employees, however, give the Court pause because of their at-least-arguable inconsistency with this construction. First, when Plaintiff protested in person on June 5, 2009, that she had not received certain benefit checks, SSA employee Tahirhagos gave Plaintiff a formal Request for Reconsideration form to complete in accordance with the administrative review process. *See* Infiesta Decl. Ex. 2; *see also* 20 C.F.R. §§ 404.907–404 .921, 416.1407–416.1421. N. Tahirhagos then recorded the following remarks:

> The Laconia office apparently has already processed the nonreceipt complaints but [Plaintiff] does not agree with the outcome so far. She insisted to file a recon[sideration] but I could not give her any valid determination date.... I am filing a recon[sideration] for her for your review so that we can go from there.

(Infiesta Decl. Ex. 1).

Thus, Tahirhagos, acting as an agent of the SSA, apparently believed that Plaintiff had received an initial determination and could proceed with the administrative decision process (though this employee noted that it was impossible to identify a date on which the initial determination was made). Further, Anne Jacobosky, SSA Assistant Regional Commissioner, Processing Center Operations, indicated in a letter to Plaintiff dated January 13, 2010, that Plaintiff had 30 days from the date of the letter to refile "a reconsideration of the determination made." (Jacobosky Letter ¶ 1). And finally, internal SSA documentation dated July 6, 2010, indicates that Plaintiff's request for reconsideration dated February 4, 2010, was slated for processing. (Infiesta Decl. ¶ 9 & Ex. 1)

Plaintiff might plausibly argue from these statements that Defendant is estopped from contending now that Plaintiff was never able to proceed with the administrative process at all because her claim simply falls outside its scope. This is

all the more attractive an argument given that none of these responses apparently comports with the POMS instruction regarding how to handle requests for replacement checks. But "the POMS are internal SSA policy manuals, and as such, have no legal force." *Briller v. Barnhart,* No. 04 Civ. 3649(RWS), 2005 WL 2403857, at \*9 (S.D.N.Y. Sept. 29, 2005). And "misrepresentations by a governmental official do not bind the government or excuse noncompliance with a statutory requirement." *Chukwueze v. NYCERS,* 891 F.Supp.2d 443, 452–53 (S.D.N.Y.2012).

These statements, even if construed as misrepresentations, were likewise insufficiently improper to impair the normal operation of the Commissioner's regulations. That is, even had SSA employees affirmatively assured Plaintiff that her claim was subject to the review process, Plaintiff would nonetheless still be unable to seek administrative and judicial review on this claim. *Cruz v. Apfel,* 48 F.Supp.2d 375, 379 (S.D.N.Y.1999) ("[T]he SSA could not now be estopped even if an employee of the SSA had responded to her request and assured [the plaintiff] that [an improper approach] would be effective."); *see* Schweiker, 450 U.S. at 789–90 ("If Connelly's minor breach of such a manual suffices to estop petitioner, then the Government is put 'at risk that every alleged failure by an agent to follow instructions to the last detail in one of a thousand cases will [estop it as well].' " (quoting *Hansen v.. Harris,* 619 F.2d 942, 956 (2d Cir.1980) (Friendly, J., dissenting), *rev'd sub nom. Schweiker,* 450 U.S. 785)).

**\*12** Nor is this a circumstance in which the Court should take jurisdiction over a determination without regard for the jurisdictional role of the review process. Though, as discussed above, Plaintiff's claim here does not go to her status as a beneficiary, it emphatically is not "collateral" to a claim for benefits: the dispute is about whether Plaintiff will get a sum of money she demands. *Mathews,* 442 U.S. at 330. Second, there is no constitutional claim at issue here at all. The Court simply may not review a claim, like Plaintiff's here, that does not arise from an initial determination of the Commissioner. *Colman,* 1994 WL 808125, at \*2 ("The SSA's decision is not reviewable by this Court and plaintiff has raised no colorable constitutional claim which would otherwise confer subject-matter jurisdiction upon this Court."). [12]

At a higher level of abstraction, the Supreme Court has instructed that courts considering whether they should hear

Social Security appeals outside the normal sequence of the administrative review process "should also be guided by the policies underlying the exhaustion requirement." *Bowen, 476 U.S. at 484.* That guidance dictates that the Court should not examine Plaintiff's claim. "Exhaustion is the rule, waiver the exception. This is so because of a variety of prudential and separation-of-powers concerns ." *Abbey, 978 F.2d at 44.* As "an expression of executive and administrative autonomy," *McKart, 395 U.S. at 194* (internal quotation marks and citation excluded), "one of the doctrine's principal purposes," *Abbey, 978 F.2d at 44,* is "preventing premature interference with agency processes, so that the agency may function efficiently," *Weinberger, 422 U.S. at 765.* But intervening here would obstruct those goals in a serious way and at an unusually high cost. First, the Court would be compelled to assess the Commissioner's decision here absent any meaningful guidance regarding how to do so. Even worse, permitting Plaintiff to maintain her suit would constitute a serious invasion of the Executive's capacity to conduct its own affairs, and could provide a basis—though necessarily a slim one—for many other claimants and beneficiaries to contend that they too should be able to obtain judicial review of a host of procedural, factual determinations essential to the Commissioner's efficient conduct of the SSA's important work.

In short, the Court does not have jurisdiction over Commissioner's refusal to provide replacement checks to Plaintiff. The Court is sympathetic that this conclusion leaves Plaintiff with no recourse other than to request the non-binding review offered in the Jacobosky Letter. Plaintiff could understandably, in this circumstance, nonetheless petition the Court to overlook the statutory and regulatory bars against this action. But " '[e]quitable considerations and the court's regret for the misfortune of the applicant cannot govern over the express provisions of the Act.' " *Morton v. Barnhart,* No. 02 Civ. 4166(WHP)(AJP), 2003 WL 1856530, at *9 (S.D.N.Y. Apr. 22, 2003) (report and recommendation) (quoting *Fangman v. Gardner,* Civ. No. 02798, 1968 WL 2138 at *3 (D.Neb. Mar. 13, 1968), *adopted in SSR 68–68c,* 1968 WL 3969, at *3 (S.S.A.1968)). The Commissioner's decision here was not an initial determination, and so Plaintiff was not eligible even to seek administrative review, much less the review of this Court. *See Coles v. Astrue,* No. 10 Civ. 4751(JFB), 2012 WL 695849, at *4–5 (E.D.N.Y. Mar. 5, 2012) ("A denial of a request to reopen a determination or decision is an administrative action and it is not an initial

determination. 20 C.F.R. § 416.1403.... Accordingly, this Court is precluded from reviewing the decision not to reopen the November 9, 2000 determination.").

### 2. Mandamus Jurisdiction

**\*13** In making every conceivable accommodation for Plaintiff's *pro se* status, the Court has considered other arguments that could, in theory, provide Plaintiff with a mechanism for recovery here. Although neither party addresses the issue in their court filings, another alternative argument is that the Court has mandamus jurisdiction. After reviewing the relevant law and the instant record, the Court concludes that mandamus jurisdiction is unavailable.

Mandamus jurisdiction enables a district court "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. It "is an extraordinary remedy," *Aref v. United States,* 452 F.3d 202, 206 (2d Cir.2006), and will only be granted if the following three conditions are met: "[i] a clear right in the plaintiff to the relief sought; [ii] a plainly denied and peremptory duty on the part of the defendant to do the act in question; and [iii] no other adequate remedy [is] available." *Lovallo v. Froehlke,* 468 F.2d 340, 343 (2d Cir.1972). Here, neither the first nor the second criterion is satisfied. Plaintiff has no right to administrative review of her claim because it was not an initial determination. And for the same reason, the Commissioner has no duty to offer Plaintiff more process than she has already received. Though SSA confessedly has not processed Plaintiff's request for reconsideration, it is not the case that the Commissioner is denying Plaintiff administrative process for no reason other than disorganization or recalcitrance. Just the opposite: Plaintiff's request remains unprocessed because the Commissioner concludes, and the Court now agrees, that no formal reconsideration was ever available to Plaintiff for a dispute about whether certain checks and direct deposit payments were properly transferred to Plaintiff's custody. Mandamus jurisdiction is not appropriate where the Court has already ruled that the Commissioner was correct to forgo any further administrative review for Plaintiff's claim.

### CONCLUSION

For the reasons set out above, Defendant's motion is GRANTED. The Court understands that Plaintiff will likely find this result unsatisfying. But it is simply not permitted for

the Court to reexamine a determination of the Commissioner that is not of a type eligible or suitable for administrative or judicial review.

The Court suggests that the Commissioner consider, given Plaintiff's assiduous efforts over many years to protest the nonreceipt of which she complains here, whether it may be equitable and appropriate to conduct the optional, non-reviewable reexamination offered in the first sentences of 20 C.F.R. §§ 404.903 and 416.1403(a). It may provide Plaintiff with some comfort to receive a written explanation of the basis for the Commissioner's conviction that the payments at issue were properly made. If the Commissioner elects to do so, however, the provision of such an explanation will not render Plaintiff's claim eligible for administrative or judicial review.

**\*14** The Clerk of Court is respectfully directed to terminate the motion pending at docket entry 12 and to close the case.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 1909363

---

## Footnotes

1   At the time this action was brought the Commissioner was Michael J. Astrue. Commissioner Astrue has since stepped down and been succeeded by Acting Commissioner Carolyn W. Colvin.

2   The facts throughout are drawn from the Complaint (Dkt.# 2) ("Compl."); Defendant's Statement of Undisputed Facts in Support of Its Motion for Summary Judgment (Dkt.# 14) ("Def.56.1"); and the Declaration of Julio Infiesta ("Infiesta Decl.") and exhibits attached thereto. For convenience, Defendant's Memorandum of Law in Support of Its Motion to Dismiss or, in the Alternative, for Summary Judgment (Dkt.# 13) is referred to as "Def. Br."; Plaintiff's Affirmation in Opposition to Defendant's Motion (Dkt.# 34) is referred to as "Pl. Opp."

3   The record is not perfectly clear regarding the period during which Plaintiff alleges she did not receive Social Security payments. Defendant indicates in two documents submitted in support of this motion that the period of nonreceipt extended from 2001 to 2004. (*See* Infiesta Decl. ¶ 4, Ex. 1; Def. 56.1 ¶ 2). The Complaint, however, alleges nonpayment for "four year[s] from 2001–2005." (Compl.1). The record also does not clarify whether the SSA withheld benefits in full or in part from 2005 to 2008.

4   While the Infiesta Declaration simply states that Tahirhagos gave Plaintiff a Request for Reconsideration form (Infiesta Decl. ¶ 5), Tahirhagos's internal remarks seem to indicate actually filing a reconsideration form on Plaintiff's behalf, though no such form appears in the record.

5   Plaintiff signed but did not date this form, and Defendant simply states that the form is undated. (Infiesta Decl. ¶ 11; Decl. 56.1 ¶ 9). The form does, however, bear the following notation typed in its upper left corner: "JAN–06–201008:44 SSA." Whether this indicates that the SSA processed the form on January 6, 2010, at 8:44 a.m., or has some other meaning, is impossible to determine.

6   This matter was at that time before the Honorable Jed S. Rakoff, United States District Judge for the Southern District of New York, who referred it to the Honorable Henry B. Pitman, United States Magistrate Judge for the Southern District of New York. It was reassigned to the Honorable Andrew L. Carter, Jr., United States District Judge for the Southern District of New York, on December 29, 2011. (Dkt.# 20). It was transferred to the undersigned on June 25, 2013. (Dkt.# 25).

7   20 C.F.R. §§ 404.900–999 (Subpart J) explains the administrative review process under Title II of the Social Security Act. 20 C.F.R. §§ 416.1400–1499 (Subpart N) explains the administrative review process under Title XVI of the Social Security Act. For the purposes of the instant motion, these processes are identical.

8   If a claimant is solely challenging the controlling law on constitutional grounds, he may forgo the third and fourth steps and proceed directly to judicial review in district court via the expedited appeals process. *See* 20 C.F.R. §§ 404.900(a)(6), 416 .1400(a)(6).

9   The second, third, and fourth steps of the SSA administrative review process—reconsideration, ALJ decision, and Appeals Council review—are not at issue in this case.

10  Performing such an assessment would be especially bizarre and counterproductive where, as here, a beneficiary has filed a claim form explicitly acknowledging that she received and cashed the checks at issue. (*See* Infiesta Decl. Ex. 4).

11  At the time Defendant filed her moving papers, the relevant language was contained in POMS GN 02401.925.

12  Other judicially identified routes by which courts may take jurisdiction of claims otherwise not properly considered are not relevant here. For example, the Second Circuit has explained that exhaustion of administrative process is not necessary where such exhaustion would be futile because the challenge is to a regulation or statute "which the agency has either no power, or no inclination, to correct." *Abbey v. Sullivan,* 978 F.2d 37, 45 (2d Cir.1992). Alternatively, exhaustion may be waived when an agency refused to permit a claimant to obtain the administrative process he seeks. *See Skubel v. Fuoroli,* 113 F.3d 330, 334–35 (2d Cir.1997). Finally, claimants may go to court instead of continuing to pursue administrative remedies when doing so would risk irreparable harm. *Mathews,* 424 U.S. at 332. But all these are exceptions to the requirement of administrative exhaustion. This case poses a different problem entirely: whether the administrative review process was ever triggered at all. It was not.

---

**End of Document**                                        © 2021 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:20-cv-00837-TJM-TWD   Document 13   Filed 02/22/21   Page 37 of 53

Dean A. v. Berryhill, Not Reported in Fed. Supp. (2018)

2018 WL 4623069
Only the Westlaw citation is currently available.
United States District Court, D. Minnesota.

DEAN A., Plaintiff,

v.

Nancy A. BERRYHILL, Deputy Commissioner
for Operations, performing the duties
and functions not reserved to the
Commissioner of Social Security, Defendant.

Case No. 17-cv-5572 (TNL)
|
Signed 09/26/2018

**Attorneys and Law Firms**

Stephanie M. Balmer,[1] Falsani, Balmer, Peterson & Balmer,
1200 Alworth Building, 306 West Superior Street, Duluth,
MN 55802 (for Plaintiff); and

Pamela Marentette, Assistant United States Attorney, United
States Attorney's Office, 300 South Fourth Street, Suite
600, Minneapolis, MN 55415; and Tracey Wirmani, Social
Security Administration, Office of the General Counsel, 1301
Young Street, Suite A702, Dallas, TX 75202 (for Defendant).

**ORDER**

Tony N. Leung, United States Magistrate Judge

### I. INTRODUCTION

**\*1** This matter is before the Court on Defendant Nancy
A. Berryhill's ("the Commissioner") Motion to Dismiss
(ECF No. 7), seeking dismissal of this matter for lack of
subject matter jurisdiction under Fed. R. Civ. P. 12(b)
(1). The parties have consented to a final judgment from the
undersigned United States Magistrate Judge in accordance
with 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, and D. Minn.
LR 72.1(c).

### II. BACKGROUND[2]

#### A. Overpayment of SSI

In 1995, Plaintiff began receiving Supplemental Security
Income ("SSI"). (Decl. of Cristina Prelle ¶ 3(a), ECF No. 10.)
Plaintiff was incarcerated from October 2011 to September
2012. (ALJ Decision at 2-3, Ex. 3 to Prelle Decl., ECF No.
10-3.[3]) Inmates of public institutions are not eligible for SSI
during the months in which they are incarcerated. *See* 42
U.S.C. § 1382(e)(1)(A); 20 C.F.R. §§ 416.201, .211, .1325.
Plaintiff failed to notify the Social Security Administration
("SSA") of his incarceration. (ALJ Decision at 3-4.) In
October 2013, the SSA mailed Plaintiff a letter informing him
that he had been overpaid benefits in the amount of $7,141.39
based on his incarceration. (Prelle Decl. ¶ 3(a); Ex. 1 to Prelle
Decl., ECF No. 10-1.) This letter informed Plaintiff that if
he disagreed with the decision he could ask for a waiver, an
appeal, or both. (Ex. 1 at 1 to Prelle Decl.) The letter further
informed Plaintiff that he had "60 days to ask for an appeal"
and to do so he "must fill out a form called 'Request for
Reconsideration.' " (Ex. 1 at 2 to Prelle Decl.)

#### 1. Reconsideration of Overpayment

Plaintiff filed a timely request for reconsideration. (ALJ
Decision at 1; *see* Ex. 2 at 1 to Prelle Decl., ECF No. 10-2.)
In February 2014, the SSA mailed Plaintiff a letter informing
him that his request for reconsideration was denied. (Ex. 2 at
1 to Prelle Decl.; *see* ALJ Decision at 1; Prelle Decl. ¶ 3(b).)
The letter explained that Plaintiff was "not entitled to receive
SSI while in Jail" and, "[b]ecause of [his] failure to report
[his] incarceration, [he was] overpaid $7[,]141.39." (Ex. 2
at 1 to Prelle Decl.) The letter informed Plaintiff that if he
disagreed with the decision he could request a hearing before
an administrative law judge ("ALJ") and that he had "60 days
to ask for a hearing." (Ex. 2 at 1 to Prelle Decl.) Plaintiff
timely requested a hearing before an ALJ. (ALJ Decision at
1; *see* Prelle Decl. ¶ 3(c).)

#### 2. ALJ Decision Regarding Overpayment

**\*2** The ALJ held a hearing in April 2015. (ALJ Decision
at 1.) In September 2015, the ALJ found that Plaintiff had
been overpaid SSI benefits for the time he was incarcerated.[4]
(*See generally* ALJ Decision.) The notice accompanying the
ALJ's decision informed Plaintiff that if he disagreed with the
decision, he could "file an appeal with the Appeals Council,"
and that the appeal must be filed within 60 days. (Notice of

Case 1:20-cv-00837-TJM-TWD    Document 13    Filed 02/22/21    Page 38 of 53

**Dean A. v. Berryhill, Not Reported in Fed. Supp. (2018)**

Decision Unfavorable at 1, Ex. 3 to Prelle Decl., ECF No. 10-3.)

Plaintiff did not appeal the ALJ's decision. (*See* Prelle Decl. ¶ 3(c); Quinn Aff. ¶¶ 7, 18; Ex. 2 at 1 to Quinn Aff., ECF No. 12-2.) Instead, Plaintiff conceded that there was an overpayment and sought waiver of the overpayment. (Ex. 2 at 1 to Quinn Aff. ("Rather than appeal the decision we have elected to file waiver now."); *see* Quinn Aff. ¶¶ 7, 9.)

### B. Request for Waiver

In October 2015, Plaintiff filed a request for waiver of the collection of the overpayment. (Quinn Aff. ¶ 9; Prelle Decl. ¶ 3(d); *see generally* Ex. 2 to Quinn Aff.) The SSA denied Plaintiff's request for waiver via letter. The SSA sent Plaintiff *two* letters, *both* dated February 24, 2016. (Quinn Aff. ¶¶ 10, 20.) While both letters denied Plaintiff's request for waiver, the letters provided different instructions as to what Plaintiff should do if he disagreed with the SSA's decision. One letter instructed Plaintiff to seek reconsideration if he disagreed with the SSA's decision while the other letter instructed him to ask for a hearing before an ALJ.

### 1. Reconsideration Letter

In the letter provided by the Commissioner, the SSA stated that records showed that the waiver request Plaintiff filed in October 2015 was "a duplicate of an earlier request filed 12/09/2013." (Ex. 4 at 1 to Prelle Decl., ECF No. 10-4.) This letter explained that "[s]ince there [we]re no new issues and this is a duplicate request, the decision [the SSA] made on the earlier request still applies." (Ex. 4 at 1 to Prelle Decl.) The letter then instructed:

> You may request reconsideration of our determination that the issue involved in your new request is the same as the issue involved in your previous request. If you want this reconsideration, you must request it within 60 days from the date you receive this notice. If you have additional evidence, you should submit it with your request.

(Ex. 4 at 1 to Prelle Decl; *see* Quinn Aff. ¶ 10.)

### 2. Hearing Letter

In the letter provided by Plaintiff, the SSA explained that it could not waive collection of the overpayment because the overpayment was due to Plaintiff's failure to inform the SSA of his incarceration. (Ex. 3 at 2 to Quinn Aff., ECF No. 12-3.) This letter went on to state:

> You have file [sic] a reconsideration on December 09, 2013 and per your request, a personal conference was held on January 28, 2014. You met with a representative at the St[.] Paul Social Security office, who did not work on your case before the overpayment. We denied your request on February 05, 2014. Since there is no new issues and this is a duplicate request, the decision we made on the earlier request still applies.

**\*3**  (Ex. 3 at 2 to Quinn Aff.)

This letter then instructed:

> If you disagree with this decision, you have the right to appeal. A person who has not seen your case before will look at it. That person will be an administrative law judge. The administrative law judge will review your case and look at any new facts you have before deciding your case. We call this a hearing.

(Ex. 3 at 2 to Quinn Aff.) The letter informed Plaintiff that he had "60 days to ask for a hearing" and that "[t]he 60 days start the day after you get this letter." (Ex. 3 at 2 to Quinn Aff.)

Dean A. v. Berryhill, Not Reported in Fed. Supp. (2018)

Case 1:20-cv-00837-TJM-TWD    Document 13    Filed 02/22/21    Page 39 of 53

### 3. Request for Hearing on Denial of Waiver

In a letter dated April 11, 2016, within 60 days of the February 24 denial(s), Plaintiff appealed the waiver denial by requesting a hearing before an ALJ. (Ex. 4 to Quinn Aff., ECF No. 12-4; *see* Quinn Aff. ¶ 11.) The only evidence in the record regarding the hearing request is the affidavit of Plaintiff's counsel stating that the request was mailed on April 11, 2016, accompanied by a cover letter of the same date and a request-for-hearing form signed by both Plaintiff and counsel on April 6, 2016. (Ex. 4 to Quinn Aff.; *see* Quinn Aff. ¶ 11.) The SSA did not receive Plaintiff's hearing request. (Prelle Decl. ¶ 3(e); Def.'s Mem. in Supp. at 4, ECF No. 8; Def.'s Suppl. Mem. at 5, 6, ECF No. 18.)

As of September 2016, Plaintiff was homeless, and his counsel inquired into the status of his hearing request. (Quinn. Aff. ¶ 12; *see* Ex. 5 at 3 to Quinn Aff., ECF No. 12-5.) The SSA subsequently sent Plaintiff another letter dated September 20, 2016. (Ex. 5 to Prelle Decl., ECF No. 10-5.[5]) The letter stated that records indicated that the waiver request was a "duplicate of an earlier request filed on 12/09/2013" that "was denied at the Hearing Appeal level by a[n] administrative law judge." (Ex. 5 at 1 to Prelle Decl.) The letter stated that "[s]ince there [we]re no new evidences [sic] and that was a duplicate request of the same issue, the decision [the SSA] made on the earlier request still applie[d] to [Plaintiff]." (Ex. 5 at 1 to Prelle Decl.)

The letter further stated:

> However, as stated in the notice you may request a reconsideration of our determination on February 24, 2016. We state that if you want us to reconsideration [sic], you must request it within 60 days from the date you receive that notice. If you have additional evidences [sic], you should submit it with your request. *However, we did not receive an appeal from you and the 60[ ]days has expired on April 29,[ ]2016.*

(Ex. 5 at 1 to Prelle Decl. (emphasis added).)

Plaintiff's counsel followed up with the SSA multiple times to no avail. Counsel sent a letter in October 2016, "indicating that [Plaintiff] requested the hearing, ... did so in a timely fashion and they should process this." (Quinn Aff. ¶ 13.) Counsel sent another letter in January 2017, stating that Plaintiff was "waiting for a hearing on a request for waiver." (Ex. 6 at 1 to Quinn Aff., ECF No. 12-6; *see* Quinn Aff. ¶ 14.) Counsel sent another letter in June 2017, noting that Plaintiff "requested the hearing in April 2016, which is fourteen months ago," and the request still had not been processed. (Ex. 7 at 1 to Quinn Aff., ECF No. 12-7; *see* Quinn Aff. ¶ 14.) Counsel stated that Plaintiff was "being denied due process." (Ex. 7 at 2 to Quinn Aff.) Counsel sent yet another letter in July 2017, stating Plaintiff was being denied due process of law and demanding that the SSA "[p]rocess the appeal." (Ex. 8 at 1 to Quinn Aff., ECF No. 12-8; *see* Quinn Aff. ¶ 14.)

**\*4** Subsequently, Plaintiff's counsel left at least two phone messages with the SSA office located in St. Paul, Minnesota, in an attempt to resolve this matter. (Quinn Aff. ¶ 15.) When the SSA did not return the calls, Plaintiff brought the present action. (Quinn Aff. ¶¶ 15, 16.)

### C. Present Action

Plaintiff brings the present action seeking to compel the Commissioner to process Plaintiff's request for a hearing on the waiver denial. Plaintiff alleges he timely submitted a request for a hearing within 60 days of the February 24 denial, consistent with the instructions accompanying the denial. (Compl. ¶¶ 4-5.) Plaintiff alleges that

> [a]s of the present time, the local office has refused to process the request for hearing form, a year and a half since it has been requested. Numerous phone calls and letters to the local office asking them to process the form and to explain why they haven't done so have gone unanswered (un-responded to).

(Compl. ¶ 6.) Plaintiff alleges that the Commissioner's failure to honor his request for a hearing and "to provide him due process of law is a violation of his constitutional rights and his rights under the statutes and rules governing the

[SSA]." (Compl. ¶ 7.) Plaintiff requests that "[t]his Court order [the Commissioner] to process the request for hearing form and allow [him] a hearing, on his waiver request, before an ALJ." (Compl. ¶ a.)

### III. ANALYSIS

The Commissioner has moved to dismiss this matter for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). "The burden of proving federal court jurisdiction is on the party seeking to invoke federal jurisdiction." *Mitchael v. Colvin*, 809 F.3d 1050, 1053 (8th Cir. 2016).

### A. Limited Judicial Review

"The United States has authorized limited judicial review of claims arising under Title XVI of the Social Security Act." *Bamberg v. Astrue*, No. 10 Civ. 6348(CM)(THK), 2011 WL 4000898, at *3 (S.D. N.Y. Sept. 8, 2011). Judicial review is governed by 42 U.S.C. § 405(g), 42 U.S.C. § 1383(c)(3). Section 405(g) allows for judicial review of final decisions of the Commissioner "made after a hearing." *Id.* § 405(g); *see, e.g., Mitchael*, 809 F.3d at 1054; *Lively v. Bowen*, 827 F.2d 268, 269 (8th Cir. 1987) (per curiam).

Section 405(h) conditions the right to judicial review under § 405(g) "upon compliance with the procedures set forth in the Social Security Act, namely, the proper and timely exhaustion of administrative remedies at the agency level." *Jones v. Soc. Sec. Admin.*, Civil Action No. 15-06385, 2016 WL 7238390, at *1 (E.D. La. Nov. 10, 2016), *adopting report and recommendation*, 2016 WL 7210346 (E.D. La. Dec. 12, 2016); *see* 42 U.S.C. § 405(h) ("The findings and decision of the Commissioner of Social Security after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided."). Section 405(h) further provides that "[n]o action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on *any claim* arising under this subchapter." 42 U.S.C. § 405(h) (emphasis added).

**\*5** Generally, a claimant must proceed through three additional stages of administrative review after receiving an initial determination from the SSA. *Wild v. Astrue*, No. 07-cv-1372 (JNE/JSM), 2008 WL 698483, at *3 (D. Minn. Mar. 13, 2008); *see* 20 C.F.R. § 416.1400(a)(2)-(4). If unsatisfied with an initial determination, a claimant may seek reconsideration. 20 C.F.R. §§ 416.1400(a)(2), .1405. Thereafter, if unsatisfied with the reconsideration determination, the claimant may request a hearing before an ALJ. 20 C.F.R. §§ 416.1400(a)(3), .1421, .1430. If unsatisfied with the ALJ's decision, the claimant may seek further review with the Appeals Council. 20 C.F.R. §§ 416.1400(a)(4), .1455. Once these steps have been completed, the SSA has "made [its] final decision" and a claimant may seek judicial review by filing an action in federal court. 20 C.F.R. §§ 416.1400(a)(5), .1481; *see* *Sheehan v. Sec. of Health, Educ. & Welfare*, 593 F.2d 323, 326 (8th Cir. 1979) ("Under the Secretary's regulations finality required for judicial review is achieved only after a hearing before an administrative law judge and, ordinarily, consideration by the Appeals Council.").

In briefing the motion to dismiss, the Commissioner focused her arguments on the fact that Plaintiff did not seek further review of the ALJ's decision that overpayment occurred with the Appeals Council, and therefore did not obtain a final decision under the Act. Plaintiff himself conceded that he did not seek further review of the ALJ's decision. Were Plaintiff seeking judicial review of the determination that overpayment occurred, this may well have ended the matter. Plaintiff is not, however, seeking judicial review of the ALJ's decision.

### B. Waiver Request

Following the ALJ's determination that overpayment occurred, Plaintiff submitted a request for waiver to the SSA. A waiver request is not an appeal of an overpayment determination. *Bronstein v. Apfel*, 158 F. Supp. 2d 1208, 1211 (D. Colo. 2001); *see* 20 C.F.R. § 416.551 ("Waiver of adjustment or recovery of an overpayment from the overpaid person himself (or, after his death, from his estate) frees him and his eligible spouse from the obligation to repay the amount of the overpayment covered by the waiver.").

Rather, a waiver request is a request for relief under 42 U.S.C. § 1383(b)(1)(B), which allows the Commissioner to waive recovery of overpayment in certain circumstances.

Dean A. v. Berryhill, Not Reported in Fed. Supp. (2018)

Case 1:20-cv-00837-TJM-TWD    Document 13    Filed 02/22/21    Page 41 of 53

*Bronstein*, 158 F. Supp. 2d at 1211; *see* 42 U.S.C. § 1383(b)(1)(B); 20 C.F.R. §§ 416.550-.556.

The SSA denied Plaintiff's waiver request. Significantly, Plaintiff is not asking this Court to review that denial either. Rather, Plaintiff alleges that the Commissioner is denying his constitutional right to due process by not processing his hearing request. Plaintiff seeks an order directing the Commissioner to process his hearing request and allow him a hearing before an ALJ on the waiver denial.

### C. Alternative Bases for Jurisdiction

Based on Plaintiff's allegations and the relief sought, two alternative bases for federal court jurisdiction appeared to be implicated: the mandamus statute, 28 U.S.C. § 1361, and the presence of a colorable constitutional claim. [6] Neither party had addressed these possible alternative bases for jurisdiction when briefing the motion to dismiss.

**\*6** This Court has an obligation to ensure that it has jurisdiction over this matter. *See, e.g.,* *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011) ("[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press."); *Pudlowski v. The St. Louis Rams, LLC*, 829 F.3d 963, 964 (8th Cir. 2016) (per curiam) ("A court has an independent obligation to ensure that the case is properly before it."); *Guggenberger v. Starkey Labs., Inc.*, Nos. 16-cv-2021 (JRT/LIB), 16-cv-2022 (JRT/LIB), 2016 WL 7479542, at *5 (D. Minn. Dec. 29, 2016) ("Federal courts are obligated to examine and confirm the basis for their jurisdiction, even where neither party to the controversy has raised the issue."). Accordingly, the Court ordered supplemental briefing. (Order, June 22, 2018, ECF No. 16). That briefing is now complete, and the Commissioner's motion is ripe for a determination on the papers.

### D. Mandamus

"Federal courts have jurisdiction ... under the federal mandamus statute, 28 U.S.C. § 1361, to consider challenges to the procedures used in administering Social Security benefits." *Michael*, 809 F.3d at 1054; *see* 28 U.S.C. § 1361 ("The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency

thereof to perform a duty owed to the plaintiff."); *see also, e.g.,* *Belles*, 720 F.2d at 512-13; *Dietsch v. Schweiker*, 700 F.2d 865, 868 (2d Cir. 1983). "Mandamus may issue under § 1361 against an officer of the United States only in extraordinary situations ...." *Mitchael*, 809 F.3d at 1054. The plaintiff must show "(1) a clear and indisputable right to the relief sought, (2) the state officer has a nondiscretionary duty to honor that right, and (3) there is no other adequate remedy." *Id.* (quotation omitted). "In order for mandamus to lie, the duty owed to the plaintiff must be ministerial and a positive command so plainly prescribed as to be free from doubt." *Id.* (quotation omitted). Plaintiff asserts that § 1361 confers federal court jurisdiction in this instance because the Commissioner is required to process his request for a hearing on the waiver request.

The Commissioner

> shall provide reasonable notice and opportunity for a hearing to any individual who is or claims to be an eligible individual ... and is in disagreement with any determination under this subchapter with respect to eligibility of such individual for benefits, or the amount of such individual's benefits, *if such individual requests a hearing on the matter in disagreement within sixty days after notice of such determination is received.*

42 U.S.C. § 1383(c)(1)(A) (emphasis added). Under 20 C.F.R. § 416.1430(b), the Commissioner "will hold a hearing only if you or another party to the hearing file a written request for a hearing." [7] *See* 20 C.F.R. § 416.1429 ("The Deputy Commissioner for Disability Adjudication and Review, or his or her delegate, will appoint an administrative law judge to conduct the hearing."). The Commissioner "has a nondiscretionary duty to hold a hearing, once it is requested in writing." *Cintron v. Comm'r of Soc. Sec. Admin.*, No. 09 Civ. 09039 (GBD) (KNF), 2011 WL 2791351, at *14 (S.D. NY. July 1, 2011) (referencing 20 C.F.R. § 404.930), *adopting report and recommendation,* 2013 WL 208903 (S.D. N.Y. Jan. 18, 2013). Acknowledging that "SSA has a non-discretionary right [sic] to hold a hearing only if plaintiff or another party to

Dean A. v. Berryhill, Not Reported in Fed. Supp. (2018)

Case 1:20-cv-00837-TJM-TWD    Document 13    Filed 02/22/21    Page 42 of 53

the hearing files a request for a hearing," the Commissioner contends that "Plaintiff has not put forth sufficient evidence showing that he filed an April 11, 2016 request for a hearing, and thus is not entitled to a writ of mandamus compelling the [SSA] to grant him a hearing." (Def.'s Suppl. Mem. at 3.)

**\*7** In one of the February 24, 2016 letters, Plaintiff was informed that he had 60 days to ask for a hearing. Plaintiff asserts that he requested a hearing on April 11, 2016, within the 60 days. According to Plaintiff, "the allegations of the Complaint should be taken as true in determining whether federal jurisdiction is available." (Pl.'s Suppl. Mem. at 5 n.1.)

But in a factual attack on jurisdiction, such as the Commissioner has mounted here, "the nonmoving party ... [does] not enjoy the benefit of the allegations in its pleadings being accepted as true by the reviewing court." *Branson Label*, 793 F.3d at 915; *accord Osborn*, 918 F.2d at 729 n.6 ("In a factual attack, the court considers matters outside the pleadings, and the non-moving party does not have the benefit of 12(b)(6) safeguards." (citation omitted) ). The only evidence in the record regarding the hearing request is the affidavit of Plaintiff's counsel stating that the request was mailed on April 11, accompanied by a cover letter of the same date and a request-for-hearing form signed by both Plaintiff and counsel on April 6, 2016. (Ex. 4 to Quinn Aff.; *see* Quinn Aff. ¶ 11.) Plaintiff's counsel further averred, "Of course I actually sent that request in to the appropriate office." (Quinn Aff. ¶ 11.) There is, however, no proof of actual mailing.

The Sixth Circuit Court of Appeals recently encountered a similar set of facts in *Smith v. Commissioner of Social Security*, 880 F.3d 813 (6th Cir. 2018), *pet. for cert. filed*, No. 17-1606 (Sup. Ct. May 25, 2018). Smith received an unfavorable decision from an ALJ accompanied by a notice of decision stating that he "had sixty days to file a written appeal with the Appeals Council if he disagreed with the ALJ's decision." *Smith*, 880 F.3d at 814. "Smith's attorney claimed he timely mailed a request for review to the Appeals Council, but was unable to provide any independent evidence of this." *Id.* "The [SSA] did not receive the request until approximately four months after the time for appeal expired. Finding no good cause for the untimeliness, the Appeals Council dismissed the appeal." *Id.*

Smith brought a civil action, alleging, among other things, that his due process rights were violated because "the Appeals Council denied his request for review as untimely after he allegedly timely mailed the request." *Id.* at 817. "The district court determined that aside from his attorney's own testimony, Smith was not able to provide any proof that he mailed his written request on April 24, 2014." *Id.* "The [district] court concluded that absent independent evidence, such as a postmark or dated receipt, ... [it could not] reverse the Appeals Council's determination that the written request for appeal was untimely." *Id.* (quotation omitted).

The Sixth Circuit affirmed. The Sixth Circuit stated that "Smith's dated request for appeal and his attorney's testimony that he timely mailed the request is not proof that the request was actually mailed. Further, the [SSA] has no record of ever timely receiving the request and Smith was unable to provide a postmark or dated receipt." *Id.* at 818. "Taking into account this lack of independent evidence, [the Sixth Circuit held] there is no presumption of receipt." *Id.* The appellate court went on to state that "[e]ven if such a presumption were appropriate, however, it was effectively rebutted by the [SSA]'s statement that it did not receive the request before October 1, 2014—approximately four months late." *Id.*

**\*8** The same is true here. The SSA has no record of ever timely receiving Plaintiff's hearing request. There is no independent evidence that Plaintiff's hearing request was timely mailed within the 60 days. There is no receipt. There is no postmark. There is no tracking number. There is no metadata or other independent evidence of timely mailing. This is so even after the Court raised the jurisdictional issue and provided both sides an opportunity for additional briefing. Given the extraordinary nature of mandamus relief, however, the Court cannot conclude on this record that jurisdiction exists under § 1361. The Commissioner's nondiscretionary to hold a hearing is triggered by a timely written request. There is no clear, nondisrectionary duty to hold a hearing based on a hearing request that was either untimely or never received at all. *see Michael*, 809 F.3d at 1054-55; *cf. Bamberg*, 2011 WL 4000898, at \*6 (mandamus jurisdiction appropriate where claimant timely requested hearing yet request had not been processed for over four years). Therefore, although Plaintiff raises a procedural challenge, wholly collateral to the merits of the denial of his request for waiver, *see Belles*, 720 F.2d at 512, there is no jurisdiction under § 1361.

### E. Colorable Constitutional Claim

"[W]hen constitutional questions are in issue, the availability of judicial review is presumed." *Califano*, 430 U.S. at

109; *see* Smith, 880 F.3d at 817. An exception to § 405(g)'s rule requiring a final decision of the Commissioner for judicial review exists for colorable constitutional claims. *Mitchael*, 809 F.3d at 1055; *Efinchuk*, 480 F.3d at 848. "Where the claimant raises constitutional questions, ... review is available despite the claimant's failure to exhaust administrative remedies." *Lively*, 827 F.2d at 269; *accord Jones*, 2016 WL 7238390, at *2 ("An exception to the exhaustion requirement exists where a plaintiff presents a colorable constitutional challenge to the Commissioner's decision." (citing Califano, 430 U.S. at 108-09) ); Wild, 2008 WL 698483, at *4 ("Nevertheless, despite a failure to exhaust administrative remedies, the Court may review a constitutional challenge to the Commissioner's decision."). Courts have waived the exhaustion requirement when a constitutional challenge is collateral to a claim for benefits.

*See, e.g.,* Mathews, 424 U.S. at 329-32; *Gipson v. Harris*, 633 F.2d 120, 122 (8th Cir. 1980); *Bamberg*, 2011 WL 4000898, at *4; *see also* Bronstein, 158 F. Supp. 2d at 1214.

Plaintiff asserts that he has presented a colorable constitutional claim wholly collateral to the merits of the denial of his request for waiver. Plaintiff asserts that he is being denied his right to due process because the SSA has not afforded him a hearing on the waiver denial. The Commissioner responds that "[t]his is not a case where [the] SSA denied Plaintiff reasonable notice and opportunity for a hearing regarding his waiver denial." (Def.'s Suppl. Mem. at 6.) According to the Commissioner, the "SSA did not deny Plaintiff a right to a hearing, but rather he failed to request a hearing," and Plaintiff "cannot now argue that [the] SSA denied him due process because he failed to comply with remedies provided by [the] SSA." (Def.'s Suppl. Mem. at 6.)

Plaintiff was not denied the opportunity to challenge the SSA's denial of his waiver request. In the February 24 denial, the SSA advised Plaintiff of the availability of further review. Because Plaintiff had an opportunity to challenge the denial of his wavier request, he was "provided constitutionally adequate due process, and there is no colorable due process violation alleged in the complaint." *Mitchael*, 809 F.3d at 1056 (citing Lewellen v. Sullivan, 949 F.2d 1015, 1016 (8th Cir. 1991) ). There is no colorable constitutional claim where Plaintiff is unable to show that he requested a hearing in a timely manner. *See, e.g., Mahoney v. Colvin*, Civil Action No. 15-13023-NMG, 2016 WL 8839010, at *4 (D. Mass. Nov.

7, 2016) (no colorable constitutional claim that SSA violated claimant's due process rights by failing to provide hearing despite repeated requests where there was no indication SSA received first hearing request and second hearing request was untimely), *adopting report and recommendation*, 2017 WL 1538520 (D. Mass. Apr. 13, 2017); *Jones v. Colvin*, Civil Action No. 15-6381, 2016 WL 5947350, at *4 (E.D. La. Sept. 21, 2016) (claimant "raise[d] no colorable constitutional claim that her due process rights were violated because she never had a meaningful opportunity to be heard" where "Commissioner advised [claimant] in each notice that she could request reconsideration and proceed through the four-step process, but [claimant] did not do so"), *adopting report and recommendation*, 2016 WL 5940868 (E.D. La. Oct. 13, 2016); *Collins v. Comm'r of Soc. Sec.*, No. 1:15-cv-01459-SAB, 2016 WL 8731344, at *4 (E.D. Cal. May 19, 2016) (no colorable constitutional claim where claimant "had the opportunity to seek review of the decision awarding benefits, but a review hearing was not provided because he did not file a timely request for a hearing"). Therefore, Plaintiff is unable to invoke federal court jurisdiction on this basis either.

### F. Conclusion

**\*9** Based on the foregoing, the Court concludes that Plaintiff has not met his burden of proving federal court jurisdiction. The Commissioner's motion is granted and this matter is dismissed without prejudice. In closing, the Court notes that, under the regulations, the Commissioner has the discretion to grant an extension of time to request a hearing if the claimant requests an extension in writing and shows good cause for missing the deadline.[8] 20 C.F.R. § 416.1433(c); *see* 20 C.F.R. § 416.1411.

### IV. ORDER

Based upon the record, memoranda, and the proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion to Dismiss (ECF No. 7) is **GRANTED**.

2. This matter is dismissed **WITHOUT PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dean A. v. Berryhill, Not Reported in Fed. Supp. (2018)

Case 1:20-cv-00837-TJM-TWD    Document 13    Filed 02/22/21    Page 44 of 53

**All Citations**

Not Reported in Fed. Supp., 2018 WL 4623069

## Footnotes

1    Prior to appearance of attorney Balmer on April 17, 2018, Plaintiff was represented by attorney Sean M.
     Quinn, who appears to have been with the same law firm. (ECF No. 15; *see, e.g.*, Compl., ECF No. 1; Aff.
     of Sean M. Quinn, ECF No. 12.) Unless otherwise specified, references to actions taken by counsel refer to
     actions taken by attorney Quinn.

2    The Court has construed the Commissioner's motion to be a factual, rather than facial, attack on the existence
     of subject matter jurisdiction. "In a factual attack, the existence of subject matter jurisdiction is challenged
     in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits,
     are considered." *Branson Label, Inc. v. City of Branson*, 793 F.3d 910, 914-15 (8th Cir. 2015) (quotation
     omitted); *accord Osborn v. United States*, 918 F.2d 724, 729-30 & n.6 (8th Cir. 1990). Both parties have
     submitted materials in support of their respective positions and the Court may consider such materials without
     converting the Commissioner's motion into one for summary judgment. *Osborn*, 918 F.2d at 729-30.

3    This document is nearly identical to Exhibit 1 to the affidavit of Plaintiff's counsel. (*Compare* ALJ Decision
     *with* Ex. 1 to Aff. of Sean M. Quinn, ECF No. 12-1.) The only difference is the exhibit submitted by Plaintiff
     included an exhibit list. To avoid confusion, the Court will cite only to one document.

4    The ALJ reduced the amount of overpayment to $6,932. (ALJ Decision at 6-7.) The ALJ found that "because
     [Plaintiff] was not incarcerated through the entire months of October 2011 and September 2012, [he] was
     actually overpaid benefits for the period of November 2011 through August 2012," and "the amount of the
     overpayment is more accurately described as being $6[,]932 instead of $7[,]141.39." (ALJ Decision at 6-7.)

5    Plaintiff's Exhibit 5 includes the September 20, 2016 letter (although it is addressed to counsel rather than
     Plaintiff) along with other documents whereas Exhibit 5 to the Prelle Declaration includes just the September
     20, 2016 letter (although it is addressed to Plaintiff rather than counsel). To avoid confusion, the Court will
     cite only to one document.

6    Plaintiff asserts that "[t]he Court has jurisdiction because [his] claim is collateral to his receipt of benefits." (Pl.'s
     Suppl. Mem. at 4, ECF No. 17.) The collateral/procedural and constitutional nature of Plaintiff's claim provides
     other avenues for federal court jurisdiction outside of 42 U.S.C. §§ 405(g) and (h) in the appropriate
     circumstances. *See, e.g., Belles v. Schweiker*, 720 F.2d 509, 512 (8th Cir. 1983) (no obstacle to mandamus
     jurisdiction for procedural claims); *see also, e.g., Califano v. Sanders*, 430 U.S. 99, 108-09 (1977);
     *Mathews v. Eldridge*, 424 U.S. 319, 329-32 (1976); *Mitchell*, 809 F.3d at 1055; *Efinchuk v. Astrue*,
     480 F.3d 846, 848 (8th Cir. 2007); *Bamberg*, 2011 WL 4000898, at *4 (constitutional challenges excepted
     from exhaustion requirement). The collateral/procedural nature of Plaintiff's claim does not *itself* provide an
     independent basis for federal court jurisdiction.

7    Notably, the next step in the administrative process after the initial denial of Plaintiff's waiver request was
     reconsideration, not a hearing before an ALJ. *Compare* 20 C.F.R. §§ 416.1400(a)(2) ("If you are dissatisfied
     with an initial determination, you may ask us to reconsider it."), .1405 ("An initial determination is binding
     unless you request a reconsideration within the stated time period, or we revise the initial determination.") *with*
     20 C.F.R. §§ 416.1400(a)(3) ("If you are dissatisfied with a reconsideration determination, you may request
     a hearing before an administrative law judge."), .1421 ("The reconsidered determination is binding unless—
     (a) You ... request[ ] a hearing before an administrative law judge within the stated time period and a decision

**Dean A. v. Berryhill, Not Reported in Fed. Supp. (2018)**

Case 1:20-cv-00837-TJM-TWD     Document 13     Filed 02/22/21     Page 45 of 53

is made ...."); .1429 ("If you are dissatisfied with one of the determinations or decisions listed in § 416.1430, you may request a hearing."), .1430(a) ("You ... may request a hearing before an administrative law judge if we have made—(1) A reconsidered determination ....").

While Plaintiff states he "has a clearly delineated right to a hearing after being denied upon reconsideration," (Pl.'s Supp'l Mem. at 5), there is no indication in the record that Plaintiff requested reconsideration of the waiver denial. Instead, Plaintiff himself stated that he requested a hearing rather than reconsideration. (Quinn Aff. ¶¶ 10-11; *see* Compl. ¶¶ 4-5. Any request by Plaintiff for a hearing prior to seeking reconsideration was, therefore, arguably improper. As stated above, however, the SSA sent Plaintiff two letters of the same date, each providing different instructions as to what Plaintiff should do if he disagreed with the denial of the waiver request. Section II.B *supra.* One directed Plaintiff to seek reconsideration, and the other directed him to request a hearing before an ALJ. *Id.* Plaintiff elected to request a hearing.

8      The same is true with respect to requests for reconsideration. *See* 20 C.F.R. § 416.1409(b). *See supra* n.7.

---

**End of Document**                                   © 2021 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:20-cv-00837-TJM-TWD   Document 13   Filed 02/22/21   Page 46 of 53

Korb v. Colvin, Not Reported in Fed. Supp. (2014)

2014 WL 2514616
Only the Westlaw citation is currently available.
United States District Court, N.D. California.

Richard E. KORB and Faye Y. Korb, Plaintiffs,
v.
Carolyn W. COLVIN, Acting Commissioner
of Social Security, Defendant.

Case No. 4:12–cv–03847–JST
|
Signed 06/04/2014

**Attorneys and Law Firms**

Richard Elliot Korb, Law Offices of Richard E. Korb,
Berkeley, CA, for Plaintiffs.

Jean Marie Turk, Attorney at Law, Susan Leah Smith, Social
Security Administration, San Francisco, CA, for Defendant.

**ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANT'S MOTION TO DISMISS**

Re: ECF No. 43

JON S. TIGAR, United States District Judge

 *1 This matter is once again before the Court on a motion
to dismiss. ECF No. 43. The Court will GRANT the motion
in part and DENY it in part.

**I. BACKGROUND**

**A. Procedural History**
Plaintiff Richard Korb, an attorney, filed this action *pro se*
on July 23, 2012, against the Commissioner of the Social
Security Administration (SSA) and the SSA Operations
Center "for the purpose of obtaining judicial enforcement of
a final decision of the Commissioner of Social Security (May
7, 2009) in Plaintiff's favor and subsequent SSA 'Notice of
Award,' promising to send Plaintiff a check in the sum of
$9,126.40." ECF No. 1 ¶ 1. Richard's [1] original complaint
asserted jurisdiction based on his exhaustion of administrative
remedies pursuant to 42 U.S.C. § 405(g). The Clerk of
Court issued a Social Security Procedural Order, as it does
in all cases seeking review of an SSA decision, on the day

the original complaint was filed. ECF No. 2. That prompted
Richard to file his First Amended Complaint, which alleged:

> This is not an action to review an award by the Commissioner
> of Social Security.

> This is a mandamus action pursuant
> to 28 U.S.C.A. § 1361 to compel
> the Social Security Administration
> and its Commissioner to perform their
> duty pursuant to the final decision of
> the Commissioner of Social Security
> (May 7, 2009) in Plaintiff's favor
> and the subsequent SSA "Notice of
> Award," in which SSA stated they
> would send Plaintiff a check in the
> sum of $9126.40 ? which, SSA has,
> notwithstanding its final decision and
> award, refused to honor or enforce for
> over three years.

ECF No. 4 ¶ 1. The First Amended Complaint also alleged,
again, that Richard had exhausted all administrative remedies
and that the Court had jurisdiction pursuant to both 42
U.S.C. § 405(g) and 28 U.S.C. § 1361. ECF No. 4 ¶ 4. The
Court consequently vacated the procedural order pertaining
to SSA appeals. ECF No. 7 (Hamilton, J.).

Richard filed a Second Amended Complaint on October
22, 2012, which added claims for declaratory relief and an
accounting. ECF No. 14. Defendants moved to dismiss on
December 17, 2012, pursuant to Federal Rules of Civil
Procedure 12(b)(1) for lack of subject matter jurisdiction and
12(b)(6) for failure to state a claim upon which relief may be
granted. ECF No. 15.

Rather than responding, Richard filed a Third Amended
Complaint ("TAC"), which added his ex-wife, Faye Korb, as
Plaintiff, and augmented Richard's factual allegations. ECF
No. 29. The TAC named the SSA and the SSA Commissioner
as Defendants, and asserted that this Court had jurisdiction
over Plaintiffs' claims pursuant to the mandamus statute, 28
U.S.C. § 1361, federal question jurisdiction, 28 U.S.C. §
1331, sections 702 and 706 of the Administrative Procedure
Act ("APA"), codified at 5 U.S.C. §§ 702 and 706, and
Federal Rules of Civil Procedure 57 and 65. TAC, ECF No.

Korb v. Colvin, Not Reported in Fed. Supp. (2014)

Case 1:20-cv-00837-TJM-TWD   Document 13   Filed 02/22/21   Page 47 of 53

29 ¶ 1. Defendants again moved to dismiss on April 17, 2013. ECF No. 31. This Court dismissed Plaintiffs' TAC with leave to amend for lack of subject matter jurisdiction. ECF No. 47.

 **\*2** Plaintiffs filed a Fourth Amended Complaint ("FAC") on October 25, 2013, ECF No. 42, which again augmented Plaintiffs' allegations and asserted claims under the mandamus statute, 28 U.S.C. § 1361, sections 702 and 706–708 of the APA, codified at 5 U.S.C. §§ 702 and 706–08, and section 552a of the APA, 5 U.S.C. § 552a. FAC ¶ 1.

Defendants moved to dismiss on January 9, 2014, ECF No. 43, which motion the Court now considers.

### B. Factual Allegations

In March 1996, while returning home from work in San Francisco, Richard Korb was mugged near the West Oakland Bart Station, in Oakland, California. FAC ¶ 8. The injuries Richard received forced him to stop working. *Id.* He began receiving Social Security disability benefits in January 1999, which continued "sporadically" through 2004. *Id.*

In 2002, and again in 2005, the SSA erroneously claimed that it overpaid Richard. *Id.* ¶ 9. Both times, Richard appealed the decision, leading to over ten years of SSA process. *Id.* He alleges that, during that time, he has spent over five hundred hours writing letters, making phone calls, meeting with SSA field officers, attending hearings, and filing and litigating administrative appeals. *Id.* The SSA ruled in Richard's favor twice, but he continues to receive letters demanding repayment of benefits for the period from 1999 to 2004. *Id.* ¶¶ 9.

On March 9, 2009, the SSA Appeals Council issued a "Notice of Appeals Council Action" finding that: (1) Richard was not overpaid benefits, and (2) the SSA actually *owed* Richard benefits in the amount of $10,529. *Id.* ¶ 10. On May 7, 2009, this decision became the "final decision" of the SSA. *Id.* ¶ 12. The Notice of Appeals Council Action stated that the date of the notice of the initial determination was August 23, 2005. *Id.* ¶ 11. Accordingly, the SSA had the authority to modify the Commissioner's decision until August 22, 2009. *Id.*

Despite the SSA's issuance of a final decision, and Richard's repeated requests for payment, the SSA did not pay him for the next three and one-half years. *Id.* ¶ 13. On August 2, 2010, the SSA sent Richard a "Notice of Award" informing him that he would receive a check, *id.* ¶ 14, but the check never came,

*id.* Instead, the SSA informed Richard that his case was still under investigation. *Id.* In separate letters, it also continued to demand repayment for overpaid benefits. *Id.*

Richard then asked his Congressman, Rep. John Garamendi, to intervene. *Id.* Rep. Garamendi's staff sent a letter to the SSA on May 22, 2012, requesting an explanation. *Id.* In response, on July 10, 2012, the SSA issued Richard a "Notice of Change in Benefits" disavowing the prior award for underpayment of benefits and demanding $59,208.90. *Id.*

Richard filed this action two weeks later. *Id.* ¶ 15.

After this action was filed, the SSA continued to send Richard correspondence about his case. *Id.* On September 12, 2012, the SSA sent him billing statements for $15,219.10 and $43,989.80 for overpayment. *Id.* On October 8, 2012, the SSA issued a "Notice of Revised Decision" with respect to the May 2009 final decision, "unilaterally revising the Commissioner's decision. *Id.* ¶ 17.

Then on October 16, 2012, three months after this action was filed, the SSA issued Richard an accounting summary indicating that the SSA owed him $9,379.80, not $10,529. *Id.* ¶ 19. However, the summary also stated that he had previously received $168,287.00 in benefits, including $103,698 in disability benefits over three months in 1999, even though the maximum disability benefit allowed Richard during that period was $1,454 per month. *Id.* The summary also stated that Richard should have been paid $96,007.80, and that $83,657.00 in benefit checks sent to him were returned or not cashed. *Id.* Richard, believing these amounts to be incorrect, requested records from the SSA to support the summary. *Id.* ¶ 21. The SSA refused to produce additional supporting documentation, claiming that the records were in the possession of the Treasury Department, or, alternately, that they had been destroyed. *Id.*

 **\*3** On March 17, 2013, Richard received a "revised" accounting summary, stating that he should have received $93,081.90 in benefits, not $96,007.80, and that he was "no longer considered to be overpaid." *Id.* ¶ 24. The revised summary also deleted any reference to disability checks totaling $83,657 that were returned or not cashed by Richard, and stated that the SSA sent him a check for $9,379.80 in September 2012. *Id.* The revised accounting summary allowed for Richard to appeal the SSA's decision. He appealed by letter on March 20, 2013.

Korb v. Colvin, Not Reported in Fed. Supp. (2014)

Case 1:20-cv-00837-TJM-TWD    Document 13    Filed 02/22/21    Page 48 of 53

The SSA submitted, as an exhibit to a Joint Case Management Statement, its response to Richard's March 20 request for reconsideration. ECF No. 38 at 8. The response reiterates that Richard is no longer considered either overpaid or underpaid, by virtue of the $9,379.80 check he received after this suit was filed. It also confirms the accounting summary and states that Richard is entitled to appeal to an Administrative Law Judge. Richard sent the SSA a letter appealing the determination on July 25, 2013. According to a supplemental declaration Richard submitted in support of his opposition to the SSA's motion to dismiss, he has not heard from the SSA in the subsequent eight months. Korb Supp. Decl., ECF No. 50 ¶ 2.

Richard Korb's ex-wife, Faye Korb, also received disability benefits based on Richard's disability determination. *Id.* ¶ 25. From 2003 to 2004, the SSA withheld some of the benefits due to Faye and the couple's three children because of alleged overpayments. *Id.* ¶ 28. According to the FAC, Faye earned $20,000 in 2001, but the SSA claimed she earned $250,000. *Id.* For several years, the amount paid to Faye and the amount listed on her 1099 SSA Benefit Statements, issued by the SSA, conflicted. *Id.* ¶ 29. In 2005, Faye was told her case was closed and no amount was due. *Id.* ¶ 30. However, she later learned that the IRS and credit bureaus had been notified in 2005 of a delinquency in the amount of $13,000. *Id.* ¶ 29. This damaged her credit score, which did not recover until 2012. *Id.* ¶ 29.

After a brief lull, the SSA began to send demand letters to Faye in about 2007. *Id.* ¶ 30. On the advice of the SSA, she submitted an economic hardship appeal waiver request. *Id.* She was told she would be notified if her appeal was denied. *Id.* Three years passed, and she began receiving "demand for repayment" letters again. *Id.*

After Richard's favorable 2009 determination, Faye attempted to persuade SSA to amend its accounting and stop sending her notices of overpayment. *Id.* ¶ 31. The attempt failed, and in June 2010, Faye received a notice indicating that she had been overpaid $14,103.00 in benefits. *Id.* ¶ 31. On August 27, 2012, the SSA sent a letter demanding $27,120. *Id.* ¶ 32; Ex. B. On October 15, 2012, the SSA withheld $5,972 in disability benefits due to Faye in order to "repay" the alleged overpayment. *Id.* ¶ 33. In March 2013, the Treasury withheld federal tax refunds from Faye on behalf of the SSA. *Id.* ¶ 34. Then, in October 2013, Faye received a letter demanding repayment of $7,520 and $1,712. *Id.* ¶ 36. The SSA continues to demand repayment from Faye, and she has not recovered

any of the funds withheld over the last ten years due to alleged overpayments. *Id.*

The FAC alleges that Faye's benefits were entirely derivative of Richard's, and that the SSA's decision finding he was underpaid applies equally to Faye. Plaintiffs also allege that field representatives of the Mission Viejo, California SSA office informed them that the SSA continued to erroneously pursue repayment from Faye because Richard did not add her to this suit as a plaintiff until April 2013. *Id.* ¶ 26.

**\*4** Defendants submitted with their motion to dismiss a declaration stating that Faye contacted the SSA on October 10, 2012 indicating that she had filed for a waiver of her overpayment. Gervasi Decl. ISO Mot. to Dismiss, ECF No. 43 ¶ 13. The SSA informed Faye that it had no waiver request on record. *Id.* Faye indicated that she would send a waiver form. *Id.* As of the filing of its motion the SSA declares that it has no waiver form on record. *Id.* ¶ 14.

The same declaration states that Richard requested a review of the October 16, 2012 notice sent by the SSA, which informed Richard that he would receive $9,379.80, and contained an accounting of benefits he had been paid. *Id.* ¶ 6; Ex. B. The SSA responded with a revised determination on March 17, 2013, which informed Richard that "SSA no longer considered Plaintiff to be overpaid." *Id.* ¶ 8; Ex. C. Richard requested reconsideration of that notice on March 20, 2013. *Id.* ¶ 10; Ex. D. The declaration states that the "SSA is currently processing Plaintiff's requested reconsideration." *Id.* ¶ 12. Over one year has passed since the reconsideration was requested.

The FAC makes claims for violation of the A PA, "wrongful seizure of property by a federal agency," mandamus, and declaratory and injunctive relief. Both plaintiffs seek an injunction prohibiting SSA from continuing to demand repayment of past benefits or from seizing further assets, and a declaration that neither plaintiff owes the SSA any money. *Id.* ¶ 36. Richard also seeks an order requiring the SSA to produce documentation of its accounting of his benefits, or to pay him the full amount owed according to his 2009 Notice of Decision. *Id.* at 18.

## II. LEGAL STANDARDS

"A ⬛ Rule 12(b)(1) jurisdictional attack may be facial or factual. In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their

Korb v. Colvin, Not Reported in Fed. Supp. (2014)

Case 1:20-cv-00837-TJM-TWD    Document 13    Filed 02/22/21    Page 49 of 53

face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction."

*Safe Air for Everyone v. Meyer,* 373 F.3d 1035, 1039 (9th Cir. 2004) (citation omitted). In resolving a facial attack, courts assume that the allegations are true, and draw all reasonable inferences in the plaintiff's favor. *Wolfe v. Strankman,* 392 F.3d 358, 362 (9th Cir. 2004) (citations omitted). Further,

> In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment. The court need not presume the truthfulness of the plaintiff's allegations. Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction.

*Safe Air,* 373 F.3d at 1039 (citations omitted).

On a *Rule 12(b)(6)* motion to dismiss, courts accept the material facts alleged in the complaint, together with reasonable inferences to be drawn from those facts, as true. *Navarro v. Block,* 250 F.3d 729, 732 (9th Cir. 2001). However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

**\*5** To survive a motion to dismiss, a plaintiff must also plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). Plausibility does not mean probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 556 U.S. at 678. "A claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### III. ANALYSIS

The SSA moves to dismiss on the grounds that (1) Plaintiffs have not exhausted their administrative remedies, (2) Plaintiffs have identified no basis for waiving the exhaustion requirement, (3) the mandamus statute does not confer jurisdiction, and (4) Plaintiffs have not stated a claim upon which relief can be granted. [2]

#### A. Richard Korb

##### 1. **Exhaustion of Administrative Remedies**

Defendant argues that the Social Security Act provides the exclusive basis for subject matter jurisdiction over Plaintiff's claims because they arise under the Social Security Act. With the exception of Plaintiff's mandamus claim, Defendant is correct.

This federal court may not hear a case unless the party bringing it establishes the Court's jurisdiction. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992). The sole jurisdictional basis for review of administrative decisions concerning claims for benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401 et seq. and 1381 et seq., is set forth in 42 U.S.C. § 405(g). *Kaiser v. Blue Cross of Cal.,* 347 F.3d 1107, 1111 (9th Cir. 2003) ("Jurisdiction over cases 'arising under' Social Security exists only under 42 U.S.C. § 405(g), which requires an agency decision in advance of judicial review."). The Social Security Act provides that plaintiffs must exhaust all available administrative remedies before seeking judicial review of any such claim. 42 U.S.C. § 405(g). "Exhaustion is required because it serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency." *McCarthy v. Madigan,* 503 U.S. 140, 145 (1992).

The Supreme Court has interpreted the term "arising under" broadly to require that "virtually all legal attacks" be channeled through the administrative process. *See Shalal*

Korb v. Colvin, Not Reported in Fed. Supp. (2014)

Case 1:20-cv-00837-TJM-TWD   Document 13   Filed 02/22/21   Page 50 of 53

*a v. Ill. Council on Long Term Care,* 529 U.S. 1, 13 (2000).
"The statutory judicial review bar, under 42 U.S.C.A. § 405(h) ... is not limited to claims for monetary benefits." 30 Fed. Procedure, L.Ed. § 71:594. To determine whether a claim "arises under" the Social Security Act, the Court applies two tests: first, "claims that are "inextricably intertwined" with a [Social Security] benefits determination may arise under [the Social Security Act], and second, "claims in which 'both the standing and the substantive basis for the presentation' of the claims" is the [Social Security] Act may arise under [that Act]." *Kaiser,* 347 F.3d at 1112.[3] Included in section 405's scope are "[c]laims for money, claims for other benefits, claims of program eligibility, and claims that contest a sanction or remedy." *Shalala,* 529 U.S. at 13–14. "Simply put, the type of remedy sought is not strongly probative of whether a claim falls under § 405(h)." *Kaiser,* 347 F.3d at 1112.

**\*6** Here, the Court concludes that Richard's first (violation of the APA), second (wrongful seizure of property), and fourth (declaratory and injunctive relief) claims all "arise under" the Social Security Act because they are "inextricably intertwined" with a Social Security benefits determination—either the May 2009 final determination, or one of the SSA's subsequent determinations, such as its October 8, 2012 "Notice of Revised Decision." This means that he was required to exhaust those claims administratively before filing a federal action. *Johnson v. Shalala,* 2 F.3d 918, 920 (9th Cir. 1993).

As he did previously, Richard again argues that the exhaustion requirement should be waived in this case. "The exhaustion requirement ... is not jurisdictional, and thus, is waivable by either the Secretary or the courts." *Id.* at 921 (citing *Matthews v. Eldridge,* 424 U.S. 319, 330 (1975)). The Court applies a three-part test to determine whether it should find judicial waiver: the claim must be "(1) collateral to a substantive claim of entitlement (collaterality), (2) colorable in its showing that refusal to the relief sought will cause an injury which retroactive payments cannot remedy (irreparability), and (3) one whose resolution would not serve the purposes of exhaustion (futility)." *Briggs v. Sullivan,* 886 F.2d 1132, 1139 (9th Cir. 1989) (citing *Eldridge,* 424 U.S. at 330) (internal quotations omitted). All three elements must be met. *See Kaiser,* 347 F.3d at 1115–16.

The Court previously concluded that Richard had not satisfied the requirements for judicial waiver of the administrative exhaustion requirement. *See* Order, ECF No. 40 at 9–11. Nothing in the FAC changes the Court's analysis with regard to his first (violation of the APA), second (wrongful seizure of property), and fourth (declaratory and injunctive relief) claims for relief. Accordingly, those claims must be dismissed.

### 2. Mandamus

Richard's mandamus claim requires a different analysis, because subsequent proceedings and a careful reading of the FAC persuade the Court that Richard's claim is not a request for *review* of any agency action, but one for *enforcement* of the May 2009 final decision in his favor. As to that claim, there is no further process left to exhaust.

Plaintiffs allege (and the SSA does not dispute) that the SSA rendered a final decision in May 2009 in Richard's favor.[4] The FAC alleges the final decision related to a notice of initial determination made on August 23, 2005. The SSA's regulations permit the SSA to reopen a determination or decision within one year of the relevant notice of initial determination, "for any reason," or within four years for "good cause." 20 C.F.R. § 404.988(a)–(b).[5] Consequently, the SSA was precluded from reopening the final decision after August 23, 2009. Richard's position is that the SSA's unilateral revision of the final decision on July 10, 2012, when it issued Korb a "Notice of Change in Benefits" disavowing the prior award for underpayment of benefits and demanding $59,208.90, was *ultra vires.* FAC ¶ 14. Korb asserts the notice was without legal effect because it fell outside the four-year limitation contained in 20 C.F.R. § 404.988(b).

**\*7** Thus, Richard does not seek "judicial review" of agency action pursuant to 45 U.S.C. § 405(g). This case is not an "appeal" from a decision of the SSA, but an attempt to secure repose through administrative *res judicata* based on the SSA's own determination that Richard was under-paid. *See United States v. Utah Constr. & Min. Co.,* 384 U.S. 394, 422 (1966) ("When an administrative agency is acting in a judicial capacity and resolved disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply *res judicata* to enforce repose."); *Stuckey v. Weinberger,* 433 F.2d 904, 909–

Korb v. Colvin, Not Reported in Fed. Supp. (2014)

Case 1:20-cv-00837-TJM-TWD   Document 13   Filed 02/22/21   Page 51 of 53

10 (9th Cir. 1973) (holding that "res judicata principles are applicable to the findings and decisions of the SSA" that are made "on the merits" and "become final").

In those instances where the SSA reopens or reconsiders its own benefits determination for reasons other than those provided in 20 C.F.R. § 404.988 or analogous regulations, the administrative exhaustion requirement does not apply. *See, e.g.,* Koolstra v. Sullivan, 744 F.Supp. 243, 245 (D. Colo. 1990) (though plaintiff had not exhausted, court had mandamus jurisdiction where SSA unilaterally reopened determination in contravention of SSA regulations); Hennings v. Heckler, 601 F.Supp. 919, 925 (N.D. Ill. 1985) (though plaintiff had not exhausted, court had mandamus jurisdiction to consider whether SSA violated reopening regulations). Accordingly, the question is not whether Richard has adequately invoked jurisdiction under § 405(g), but whether he has adequately invoked the Court's mandamus jurisdiction. *See* 28 U.S.C. § 1361 ("The district courts shall have original jurisdiction of any action ... to compel an officer or employee of the United States or an agency thereof to perform a duty owed to the plaintiff."); Wilbur v. United States ex rel. Kadrie, 281 U.S. 206, 218–19 (1930) ("Where the duty in a particular situation is so plainly prescribed as to be free from doubt and equivalent to a positive command, it is regarded as being so far ministerial that its performance may be compelled by mandamus, unless there be provision or implication to the contrary.").

The Ninth Circuit has found that mandamus is an "appropriate basis for jurisdiction in an action challenging procedures used in administering social security benefits," but that mandamus will lie only if "(1) the individual's claim is clear and certain; (2) the official's duty is nondiscretionary, ministerial, and so plainly prescribed as to be free from doubt, and (3) no other adequate remedy is available." Kildare v. Saenz, 325 F.3d 1078, 1084 (9th Cir. 2003) (quoting Patel v. Reno, 134 F.3d 929, 931 (9th Cir. 1998)). Mandamus is appropriate only if the suit challenges "the authority of the [SSA] to take or fail to take an action as opposed to a decision taken within the [SSA's] discretion." Patel, 134 F.3d at 931–32. However, mandamus may "compel action, when refused, in matters involving judgment and discretion" as long as it does not "direct the exercise of judgment or discretion in a particular way." Wilbur, 281 U.S. at 218. Mandamus jurisdiction

lies to compel the SSA to pay benefits it has unreasonably withheld. *See e.g.* Briggs, 886 F.2d at 1142.

Randall D. Wolcott, M.D., P.A. v. Sebelius, 635 F.3d 757, 761 (5th Cir. 2011), is instructive. In that case, the Fifth Circuit held that a failure to carry out binding, final SSA decisions warranted mandamus relief. A Medicare contractor [6] had withheld payment from the plaintiff despite a final decision issued by an ALJ requiring him to pay in full. The court held that mandamus relief was appropriate because "the plaintiff [did] not seek a redetermination of administrative decisions ... but rather enforcement of these administrative decisions." Id. at 764. The court further held that a Medicare contractor had a "nondiscretionary duty to issue payment for a successfully appealed claim" finally determined in the plaintiff's favor. Id. at 769.

**\*8** Like the plaintiff in *Wolcott,* Richard alleges that the Commissioner of Social Security has already made a final, favorable decision in his case. FAC ¶ 10. Under section 405(h) of the Social Security Act, "the findings and decisions of the Secretary after a hearing shall be binding upon all ... who were parties to such hearing." 42 U.S.C. § 405(h). The SSA's ability to revise the May 2009 final determination expired as of August 22, 2009. 20 C.F.R. § 404.957.

The Court finds that Richard has established a clear and certain claim against the SSA for the nondiscretionary enforcement of the Commissioner's final decision favorable to him, for which no other adequate remedy is available. Accordingly, the Court has mandamus jurisdiction to entertain that claim. [7]

The prior conclusion applies only to Richard's claim for enforcement of the May 2009 final decision, and does not extend to Richard's request for an accounting. His accounting claim is based on events that occurred after the SSA issued its May 2009 final decision. Because Richard has not demonstrated that there is no further process left to exhaust, and because his accounting claim is not "clear and certain," the Court will not exercise mandamus jurisdiction over that claim.

**B. Faye Korb**

Faye's claims are premised on a distinct set of allegations. Unlike Richard, Faye was not a party to the administrative

**Korb v. Colvin, Not Reported in Fed. Supp. (2014)**

Case 1:20-cv-00837-TJM-TWD   Document 13   Filed 02/22/21   Page 52 of 53

appeal that resulted in the May 2009 final decision. Faye alleges that the SSA revised her overpayment determination in June 2010, thirteen months after the final decision. FAC ¶ 31. The FAC alleges that she received a further notice in August 2012, that the SSA withheld benefits in October 2012, and that in March 2013, the Treasury withheld tax refunds from her as repayment. FAC ¶¶ 31–34. Finally, Faye alleges that she pursued administrative process concerning these notices.

There are significant differences between Faye's claim and her husband's. First, Faye was not a party to the original administrative appeal, so she cannot argue that the SSA's subsequent actions revised any determinations concerning her benefits outside of the time set forth in 20 C.F.R. § 404.988. Second, it is unclear whether Faye even has standing to appeal the May 2009 final determination, since she appears not to have been a party to that determination. *See* FAC, ECF No. 42, at 9 ("The claims and benefits of Plaintiff Faye Korb are derivative of those of Mr. Korb."). [8] Even assuming that she does have standing, however, Faye does not allege that the SSA took any action in violation of 20 C.F.R. § 404.988. Instead, she alleges that the SSA revised her overpayment determination in June 2010, thirteen months after the final decision, well within the four-year limitation period. FAC ¶ 31. The FAC alleges that Faye received a further notice in August 2012, that the SSA withheld benefits in October 2012, and that in March 2013, the Treasury withheld tax refunds from her as repayment. FAC ¶¶ 31–34. Finally, Faye alleges that she pursued administrative process concerning these notices.

 **\*9** Faye's claim is, in essence, a claim for reconsideration of the SSA's determinations concerning her overpayment status. She has not alleged that the SSA has acted without legal authority (as Richard alleges it did with respect to him). She has not adequately alleged facts that would excuse her from section 405(g)'s exhaustion requirement. And she has failed to allege that she exhausted the administrative process made available to her. The Court can only find that Faye has failed to satisfy the exhaustion requirement. [9]

For similar reasons, the Court finds that Faye has not invoked the Court's mandamus jurisdiction. Unlike Richard, she has

other remedies available to her, including the administrative process she is already pursuing.

## IV. CONCLUSION

For the reasons stated above, both Plaintiffs' first (violation of the APA), second (wrongful seizure of property), and fourth (declaratory and injunctive relief) claims for relief are hereby DISMISSED. The SSA's motion to dismiss the third claim for relief pursuant to the mandamus statute, 28 U.S.C. § 1361, is hereby DENIED as to Richard Korb, and GRANTED as to Faye Korb. All of Faye Korb's claims in this case are therefore DISMISSED. No Plaintiff may amend the FAC without leave of Court.

The Court further ORDERS as follows:

1. No later than ninety days from the date of this Order, Defendants shall serve and file a certified copy of the transcript of the administrative record concerning Richard Korb;

2. No later than sixty days from the date of the filing of the administrative record, Defendants shall file a motion for summary judgment. Defendants' motion may address the Court's mandamus jurisdiction in light of a fuller record;

3. Richard Korb shall file any opposition or counter-motion within fourteen days of service of the motion for summary judgment;

4. Defendants shall file any reply in support of the motion for summary judgment within fourteen days of service of the opposition to the motion;

5. Richard Korb shall file any reply in support of any counter-motion within seven days of service of Defendants' reply;

6. Unless the Court Orders otherwise, upon conclusion of the briefing schedule, the Court will take the matter under submission without oral argument.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2014 WL 2514616

Korb v. Colvin, Not Reported in Fed. Supp. (2014)

Case 1:20-cv-00837-TJM-TWD   Document 13   Filed 02/22/21   Page 53 of 53

# Footnotes

1    Because both of the parties have the same surname, but different claims, the Court refers to them by their first names to identify them. The Court intends no disrespect. *See, e.g., In re Mele,* 501 B.R. 357, 359 (B.A.P. 9th Cir. 2013).

2    Although the Defendants purport to move for failure to state a claim upon which relief can be granted, their memorandum simply restates their arguments concerning jurisdiction. ECF No. 43 at 11–12. Thus, the Court will not separately address this ground.

3    *Kaiser* is binding authority even though it involved Medicare benefits. "[T]he Medicare Act incorporates the provisions of section 405(b), (g) and (h) of Title 42, the Social Security Act, to the same extent they are applicable to the Social Security Act." *Erringer v. Thompson,* 189 F.Supp.2d 984, 988 (D. Ariz. 2001).

4    At oral argument, the SSA contended for the first time that the decision was not final because Richard did not appeal the decision made *in his favor* as required by 20 C.F.R. § 404.900. The notion that someone would appeal a decision in his favor, much less be required to do so, defies common sense. It also departs from the express terms of the SSA's regulations, which provide a claimant an opportunity to appeal a determination "[i]f you [the claimant] are dissatisfied" with the determination." Richard was not "dissatisfied" with the SSA's May 2009 decision.

     Although the record does not disclose whether the final decision rendered in Richard's favor was made by an administrative law judge or the SSA Appeals Council (and Richard has alternately alleged both), the result would be the same in either instance. If the former, the ALJ's decision is final and binding on the SSA, because neither the SSA nor Richard appealed. *See* 20 C.F.R. § 404.955. If the latter, then the decision was necessarily final, as the Appeals Council is the last level of review required by the SSA's regulations prior to appeal to a federal district court. *See* 20 C.F.R. § 404.981.

5    The same regulation permits the reopening of a case "at any time" for a number of enumerated reasons, none of which the SSA asserts here.

6    The Secretary of the Department of Health & Human Services delegates the administration of the Medicare Act to the Centers for Medicare and Medicaid Services ("CMS"). CMS contracts with private insurance companies to perform carrier functions. *See* 42 C.F.R. § 421.5. The private Medicare contractors process claims, such as those at issue in *Wolcott.*

7    Because Richard can only invoke the Court's jurisdiction to enforce the final decision, and because it appears the SSA has already paid the bulk of the sum which Richard alleges he was awarded, it would appear that this case amounts to a dispute over $1,149.20.

8    The record regarding the prior proceedings is not clear because neither party has filed a certified copy of the transcript below. The Court originally ordered the Defendant to serve and file the transcript, ECF No. 2, but later vacated that order.

9    Plaintiffs both also invoke their due process rights as a ground for avoiding the exhaustion requirement. It is true that a plaintiff raising a "colorable" constitutional claim against the SSA challenging conduct that is "entirely collateral to his substantive claim of entitlement" need not satisfy the exhaustion requirement. *See Boettcher v. Sec'y of Health & Human Servs.,* 759 F.2d 719, 721 (9th Cir. 1985). This is not such a claim, however, because Plaintiffs seek relief directly related to their substantive claim of entitlement, as the Court previously determined in dismissing the Third Amended Complaint.

---

**End of Document**                                    © 2021 Thomson Reuters. No claim to original U.S. Government Works.